## MORGANTON MANUFACTURING COMPANY v. OHIO RIVER & CHARLESTON RAILWAY COMPANY.

*Action for Damages—Bill of Lading—Damaged Goods— Liability of Carrier.*

1. A bill of lading is both a contract and receipt; as a *contract* to carry and deliver the goods upon the terms and conditions specified in the instrument, it cannot be explained by parol testimony so as to alter its legal effect, in the absence of fraud or mistake, but as a *receipt* or acknowledgment of the quantity, character or condition of the articles, it may be explained, varied or contradicted like any other receipt.

2. Among connecting lines of common carriers, that one in whose hands goods are found damaged is presumed to have caused the damage and the burden is upon it to rebut the presumption.

3. When a box of goods is shipped over connecting lines and the terminal line receives the box in apparently good condition and marks the bill of lading "O. K." and the goods are found to be damaged at the end of the line, a rebuttable presumption is raised that the damages occurred on that line.

4. If the condition of the contents of a box is unknown to a railroad which receives it for transportation over its line, a failure to guard against liability for the condition of such goods by examination or stipulation is negligence.

CIVIL ACTION for damages tried before *Greene, J.*, and a jury at Fall Term, 1897, of McDOWELL Superior Court on appeal from a judgment of a Justice of the Peace. The facts are stated in the opinion of Chief Justice Faircloth. The instructions prayed for by the defendant on the trial and referred to in the opinion as having been properly refused, were as follows:

"1. When the testimony is direct, leaving nothing to inference, and, if believed, is the same thing as the fact sought to be proved, it becomes a question for the jury; but when the evidence offered by the plaintiff is circumstantial, or the evidence offered by the defendant tends to explain it, or rebut the inferences sought to be drawn from it, as in this case, then it is a question for the Court."

"2.    The plaintiff seeks to recover judgment against the defendant company for its negligence in transporting this box of glass, and relied upon the fact that the goods arrived at their destination on the car of the defendant, in a broken condition, or was so broken when opened and examined at its warehouse.    The law infers that they were damaged by its negligence; and nothing more appearing, the plaintiff would be entitled to recovery.    The defendant, however, replies by introducing testimony to rebut this inference or presumption of law; and whether the presumption is rebutted by the evidence is a question for the Court; and I hold that this inference or presumption of the law is rebutted by the defendant's testimony, if you believe the evidence of the defendant's witnesses; and no evidence being introduced but the plaintiff's to show a negligent breaking, you should render a verdict for the defendant."

"3.    A carrier is not required to examine contents of a package, if from outside appearances it is in good order. They have a right to assume that it is in good order; and if they receive it as in good order, from external appearances, although the contents are afterwards found, upon examination, to be in bad order, the railroad company will not be held liable, unless the goods were damaged by its negligence."

"4.    It was not negligence in the defendant company to receive this freight from a connecting carrier, or even marking it all right!    'O. K.,' or in good order, if the defect is a latent defect, and could not be detected from inspection of the outside.    Nor is the defendant company liable by checking the goods as 'O. K.,' or even in good order."

*Messrs. S. J. Ervin* and *E. J. Justice,* for plaintiff.
*Mr. P. J. Sinclair,* for defendant (appellant).

FAIRCLOTH, C. J.:    A box of plate glass was shipped from

New York City to Marion, N. C. The Pennsylvania Railroad Company, the initial carrier, received and transferred the case to the Norfolk & Western Road at Hagerstown. Then the car containing the box was transferred at Roanoke to the Cape Fear & Yadkin Valley road and by them brought to the Seaboard Air Line Road at Sanford with the seal of the latter on the car at Shelby, N. C. At that place the agent of the defendant broke the seal and checked off the contents of the car on the way bill and examined the box and found it in apparent good order. He said in his testimony that there were no marks of rough usage on the outside of the box—that he took a copy of the way bill and delivered it to the defendant's conductor, who carried the car and copy of the way bill to Marion and that he (the agent) marked the way-bill O. K.; also that he did not examine the contents of the box and that his company did not require him to give a receipt for freight transferred to defendant from connecting lines. The defendant's agent at Marion testified that he received the box and that the glass was not damaged in taking it off the car, nor while it was in the depot at Marion; that ten days thereafter he and plaintiff's agent opened the box and found the glass badly damaged. A contractor and builder examined the box and said it must have fallen and struck something hard, causing the break in the glass.

The agent of the first carrier at New York, sent a bill of lading with the package, stamped on its face "Released" and gave a receipt for the box "in apparent good order (contents and condition of contents unknown) to be transported to and delivered at the regular freight station of the company at ——————— subject to all the conditions" &c., among which were these words "No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route," &c. This action is against the terminal carrier.

The defendant contends that it is not liable unless it be shown that the damage occurred on its line and that there is no evidence that that was so.

We understand "released" to mean exemption from the common law liability as an insurer. It seems to be agreed that O. K. means all right or in good condition. *Baxter* v. *Ellis*, 111 N. C., 124. It must be admitted that the present system of rapid transit, consisting of through lines, connecting lines, associated lines and the like, makes it difficult in some cases to locate the line on which the damage occurs, and it would seem practicable for the interested line to make some arrangement for their own benefit and the public convenience by prorating the freight charges and also the damages, when they cannot be located, and thereby avoid the inconvenience of actual inspection at every transfer, which would not be only inconvenient and cause much delay but serious loss to the consignee.

This case illustrates the difficulty. The glass being very thick could not have been broken without a severe jar, and looking at the evidence it is scarcely possible to see where or how it occurred.

The case does not fall within the principle of *Rocky Mount Mills* v. *Railroad*, 119 N. C., 693, where it was held that the associated companies were partners, and each one liable for the negligence of either of the other lines. We are not required to discuss the liability of the other lines which handled the package of glass. The first discovery of damage was when the goods were at the terminal point of the defendant's line.

A bill of lading is something more than a simple receipt. It is a receipt and a contract. As a contract, in which the carrier agrees to transport and deliver the goods to the consignee upon the terms and conditions specified in the instrument, it is a merger of prior and contemporaneous agree-.

ments of the parties, and, being in writing, cannot be explained by parol evidence, and thereby change its legal import, in the absence of fraud or mistake. It also, by the terms of the writing, as in this case, excludes the common law liability of the carrier, because it is a special contract governed by its own limitations. The bill, as a receipt, is an acknowledgment of the quantity, character and condition of the articles delivered and received, and as such may be explained, varied or contradicted like other receipts. This exemption from the common law liability may be enforced, if it be reasonable and does not involve exemption from negligence. Ray's Negligence of Imposed Duties, p. 93, 94 and 95; *Pollard* v. *Vinton*, 105 U, S., 7; Elliott on Railroads, Section 1415.

The defendant's agent having received the box apparently in good condition and marked the bill of lading "O. K.," was an adoption of the terms and conditions specified in writing by the initial carrier, and these facts raise a rebuttable presumption that the damage occurred thereafter. The defendant endeavored to meet and overcome this presumption with evidence, and went to the jury with his evidence. The Court charged the jury that among connecting lines the carrier, in whose hands the property is found damaged, is presumed to have caused the damage and that the burden is upon the defendant to rebut this presumption and satisfy the jury that the glass was not damaged in its possession. In response to the inquiry of the jury, the Court charged them that, if the condition of the contents was unknown to the defendant, liability could have been guarded against by examination or stipulation, and that failure to do so was negligence. This we think was correct according to the authorities and the facts.

The instructions asked for by defendant were not suited to the facts, and ignored the presumption just pointed out,

and were properly refused. It has been held that the stipulation above stated is a reasonable one and consistent with public policy. *Phifer* v. *Railroad,* 89 N. C., 311. It has also been held by this Court that, if the contents and their condition be unknown, liability may be avoided by examination or by a stipulation, and that it is negligence in a receiving line not to observe these precautions. *Dixon* v. *Railroad,* 74 N. C., 538.

Affirmed.