The animals were transported by connecting lines from Nashville, Tenn., to New Bern, N.C. under a bill of lading limiting the common-law liability of common carriers, in consideration of reduced rates. In the transit one of the animals, a mule, died on the (237) cattle car of the defendant.
His Honor charged the jury that, notwithstanding the contract, the defendant was liable for the exercise of proper care in handling and transporting the stock over its line; that the burden was upon the plaintiff to show want of ordinary and proper care, and that upon the whole evidence there was no evidence that the defendant was negligent in handling and transporting this stock. The plaintiff excepted to that portion of the charge relating to the burden of proof, submitted to judgment of nonsuit, and appealed.
We cannot assent to the proposition that in cases of limited liability the burden of proof rests upon the plaintiff to show primarily the negligence of the defendant. In the case before us the plaintiff brought suit for the value of a mule which was shipped to him from Nashville, Tenn., in a car with other horses and mules. When the car reached New Bern the mule was missing. The plaintiff has no means of knowing what became of it, except information furnished by the defendant, who says that it died en route. This may be true, and we presume it is, from the testimony for the defendant, but it has neither been admitted by the plaintiff nor found as a fact by the jury.
Uncontradicted testimony is never equivalent to an admitted fact, as the jury may not believe it, and this is especially so where the alleged facts are peculiarly within the knowledge of the witness. Here, the plaintiff simply knew that the defendant received his mule under a contract to deliver it to him at New Bern, which it has failed (238) to do. He simply asks for his mule or its value, neither of which does he obtain. "The defendant says that the shippers, implied agents of the plaintiff, signed a bill of lading releasing the defendant from all risk of loss or damage from any cause whatever not resulting from the negligence of its agents, and that the burden rests upon the plaintiff of proving affirmatively not only the shipment and the loss, but that the loss occurred through the negligence of the defendant, when, in fact, he neither has not could have any knowledge as to how it occurred. It is *Page 178 
true, the defendant introduced testimony to show the death of the mule from natural causes, but it did so purely as a matter of supererogation, with the burden of proving nothing. If its contentions are correct, it need not have said a word. It made no difference how the loss occurred, provided the plaintiff could not prove that it occurred through its negligence. The entire carload of stock might have been safely stolen through the gross negligence or actual connivance of its agents, if done without the knowledge of the plaintiff, or of any one, by whom he might prove it. If this is the law, what protections is there for the shipper? If a resident of Raleigh ships freight to New York under so-called "released" bill of lading, he cannot be excepted to go with it and watch it, day and night; and yet, if he did not, how could he know the facts connected with its possible loss? The carrier could stand upon the word "released," and, without one word of explanation as to the nondelivery of the freight, simply say to the plaintiff, "Prove your case."
It is too will settled to need any citation of authority that common carriers cannot exempt themselves by contract from the results of their own negligence. This principle is recognized in the bill of lading (239) before us, yet we are asked to establish a rule of evidence that will destroy its vital principle and subvert its beneficial purposes. It makes no difference to the plaintiff whether you deny his right or simply deprive him of the only remedy by which it can be obtained, and it is equally beneficial to the defendant whether you relieve it from all liability or only place it beyond the possibility of proof.
It seems to us that the error lies in a misapprehension of the true nature of the bill of lading. It is not an agreement primarily intended to release the common-law liability of the carrier, but, as said in Pollard v.Vinton, 105 U.S. 7, "It is at once a receipt and a contract. In the former character it is an acknowledgment of the receipt of property on board his vessel by the owner of the vessel; in the latter, it is acontract to carry safely and deliver." The safe carriage and delivery are the essential objects of the contract, and it is the duty of every party to a contract to comply with his agreement to show such facts as will excuse his nonperformance. This is especially so where the contract is made in the performance of a public duty.
It is the duty of a common carrier, irrespective of contract, but subject to reasonable regulations, to accept, safely carry and deliver all goods entrusted to it. If the goods are lost, it must show what became of them, and if they are damaged it must prove affirmatively that they were damaged in some way that would relieve it from responsibility. The plaintiff has a prima facie case when he shows the receipt of goods by the carrier, and their nondelivery or delivery in a damaged condition. Any further defense is in the nature of confession and avoidance. If *Page 179 
the defendant pleads exemption by virtue of a special contract, it must prove the contract and show that the loss or damage comes within some one of the exceptions. It must appear to the court as matter of law that the contract is reasonable in all of its essential features, and that the exemptions are not contrary to public policy. All such exemptions, being in derogation of common law, should be strictly (240) construed.
So far, we think the principles herein laid down are properly deducible from all the authorities; but we now come to an irreconcilable conflict of decisions as to the subsequent burden of proof. The courts of Alabama, Georgia, Iowa, Minnesota, Mississippi, Ohio, South Carolina, Texas, Tennessee, and West Virginia, and perhaps one or two others, hold that the burden still rests upon the carrier of showing that the loss was not due to its own negligence. This view is clearly laid down in an able opinion byJudge Cooper in R. R. v. Moss, 60 Miss. 1003, where he says: "To us it also seems that public policy forbids the further relaxation of the principles of the common law governing common carriers. It is no uncommon thing in this age to see under one management a line of railroads extending from the lakes of the North to the Gulf of Mexico, or from the Atlantic to the Pacific Ocean. To hold that a shipper in New York or Chicago shall be required to establish the negligence of the carrier by proof of the circumstances of a fire in California or New Orleans would in a great number of cases results in a verdict for the carrier, even though there was in fact negligence. In a large majority of cases the facts rest exclusively in the knowledge of the employees, whose names and places of residence are unknown to the shipper. In many cases the witnesses are the employees whose negligence has caused the loss, and if known to the shipper it may be dangerous for him to rest his case upon their testimony, since the natural impulses of mankind would sway them in narrating the circumstances to palliate their fault by stating the occurrence in the most favorable light to themselves. All the authorities hold (241) that it devolves upon the carrier to show the loss to have occurred by the excepted cause. In doing this it will add but little to his burden to show all the attending circumstances; and that the burden rests upon him to do so and disprove his own negligence, we think, arises from the terms of the contract, from the character of his occupation and from the rule governing the production of evidence, which requires the facts to be proved by that party in whose knowledge they peculiarly lie."
This opinion is especially interesting, because it tersely reviews the authorities on both sides of the question, which is the single point in the case. Bishop Evidence (14 Ed.), sec. 219, adopts the same view in the following words: "And if the acceptance was special, the burden of *Page 180 proof is still on the carrier to show, not only that the cause of the loss was within the terms of the exception, but also that there was on his partno negligence or want of due care."
It would seem from the recent work of Elliott on R. R. that this has now become the settled rule of a majority of the States, as the authors say in section 1548, on page 2403: "There is some conflict among the authorities as to the burden of proof in such cases; but the prevailing rule, where the owner or his agent does not go with the stock, is, that when the animals are shown to have been delivered to the carrier in good condition, and to have been lost or injured on the way, the burden of proof then rests upon the carrier to show that the loss or injury was not caused by its own negligence."
This rule strongly commends itself to our better judgment and receives our approval, especially in view of the universal acceptance of the principle that where a particular fact necessary to be proved rests peculiarly within the knowledge of a party, upon him rests the (242) burden of proof. 5 A. E. (2 Ed.), p. 41; Best on Evidence, sec. 274; 1 Greenleaf Ev., sec. 79; Starkie on Evidence, sec. 589; Rice on Evidence, sec. 77; R. R. v. U.S., 139 U.S. 560, 567; S. v. McDuffie,107 N.C. 885, 888; Govan v. Cushing, 111 N.C. 458, 461.
On the other hand, the Federal courts, with those of a large number of States, hold that under a bill of lading containing a contract of limited liability, the burden rests upon the plaintiff of proving that the loss or damage was caused by the negligence of the defendant carrier. But we think that an examination of the cases will show that the true principle of the rule in those jurisdictions is, that the burden of proving the negligence of the carrier does not primarily rest upon the plaintiff, but is shifted
to him upon the carrier proving that the loss fell within one of the excepted causes. That the carrier must prove that the injury complained of came within one of the special exemptions created by law or contract, is admitted by all the authorities.
By the act of 1851, Congress relieved the owners of seagoing vessels from all responsibility for loss by fire unless caused by their own design or neglect, and from responsibility for loss of money and other valuables named, unless notified of their character and value, with certain other limitations of liability not arising from their own negligence. These limitations are substantially brought forward in chapter 6, title 48, of the Revised Statutes, subsequently amended by the act of 13 February, 1893. Several of the States enacted similar legislation, and the same general principles are held to apply to common carriers on land. In addition to this, it became the custom of ship owners to protect themselves by contract from risks arising from the perils of navigation. *Page 181 
Within reasonable restrictions these contractual limitations have (243) been held to be valid; and it is upon these two classes of exemptions that the decisions generally rest. Those referring to the proper or inherent vice of animals do not appear to have any bearing upon the case at bar in its present status.
It must be admitted that among the different States adhering to the same general rule there is much diversity of application as well as uncertainty of definition. This may come in some degree from the unfortunate tendency of some otherwise able judges to formulate general principles upon special cases, unmindful of the limitations or modifications that may necessarily arise from the varying facts of other cases. Some of these definitions, like our old State grants, where each grantee furnished his own survey, cover much more than was originally intended and lap over upon other essential principles. Those unlucky rights which lie within the lappage are necessarily of uncertain tenure. Of course, perfection of definition is impossible to human foresight; and as human motives and resulting action do not run in parallel lines, there is frequently an ultimate point of conflict between essential principles themselves. There the superior principles must prevail, such, for instance, as depend upon public policy or natural right. The great principle of legal construction was never better stated than by Lord Mansfield in Rex v. Bembridge, 3 Doug., 332, where he says: "The law does not consist of particular cases, but of general principles, which are illustrated and explained by these cases."
It is impracticable to review any considerable number of cases bearing upon that at bar, but a few citations from the Supreme Court of the United States, which sustain the rule most favorable to the carrier, will sufficiently illustrate this view:
In Mohler v. Ins. Co., 21 Wall., 230, 233, the Court says: "It (244) is insisted that the loss occurred through a peril of navigation, which was one of the exceptions contained in the bill of lading, and that, therefore, the carrier was excused from a delivery of the wheat. The burden of proof lies upon the carrier, and nothing short of clear proof, leaving no reasonable doubt for controversy, should be permitted to discharge him from duties which the law has annexed to his employment."
In Clark v. Barnwell, 12 Howard, 272, the Court held, quoting from thesyllabi, that: "Where goods are shipped, and the usual bill of lading given, promising to `deliver them in good order, the dangers of the sea excepted,' and they are found to be damaged, the onus probandi is upon theowners of the vessel to show that the injury was occasioned by one of the excepted causes." *Page 182 
"But though the injury may have been occasioned by one of the excepted causes, yet the owners of the vessel are responsible if the injury might have been avoided by the exercise of reasonable skill and attention on the part of the persons employed in the conveyance of the goods. But the onusprobandi then becomes shifted upon the shipper to show the negligence."
The same rule is sustained in Rich v. Lambert, 12 Howard, 347; theMajara v. Cordes, 21 Howard, 7; the Majestic, 166 U.S. 375. InTrans. Co. v. Downer, 11 Wall., 124, the Court says: "On the trial the plaintiff made out a prima facie case by producing the bill of lading, showing the receipt of the coffee by the company at New York, and the contract for its transportation to Chicago, and by proving the arrival of the coffee . . . in a ruined condition, and the consequent damages sustained. The company met this prima facie case by showing that the loss was occasioned by one of the dangers of lake navigation."
(245) In re Edwin I. Morrison, 153 U.S. 199, the Court says, on page 212: "In any aspect, the real point in controversy is, did the respondents so far sustain the burden of proof which was uponthem?" etc. It further held that, even where the loss was caused by the dangers of the sea, the burden was still upon the owners of the vessel to show that it was seaworthy. In all these cases of limited liability the rule is invariably recognized, that proof of shipment and injury makes aprima facie case for the plaintiff, and that then the burden is always upon the carrier to show that the circumstances of the loss bring it within the excepted causes. When the carrier has shown this by a preponderance of testimony, then, and then only, does the burden shift to the shipper of showing that the loss, even if within the excepted classes, might have been avoided by diligence and care upon the part of the carrier.
Therefore, under the most stringent rule, the plaintiff in the case at bar is entitled to a new trial, as the defendant did not prove to the satisfaction of the jury, by whom alone the fact could be found, that the circumstances of the loss brought it within the exception. The mere proof or admission of the terms of the bill of lading containing the stipulated exceptions is no proof that the loss comes within those exceptions. The necessary issues do not appear to have been submitted. Ordinarily, parties cannot complain of the issues in the absence of a special tender and exception; but this Court has held, in Tucker v. Satterthwaite,120 N.C. 118, that the court below must of its own motion, with or without suggestion, submit such issues as are necessary to settle the material controversies arising on the pleadings.
If the issue as to negligence of the defendant was intended to raise the question whether the loss came within the exception, then the burden *Page 183 
of proof of that issue rested upon the defendant, in order to (246) rebut the prima facie case already made out by the plaintiff. The defendant cannot be permitted, by the mere form of an issue or a "broadside" stipulation of exemption, to change the rules of evidence and practically destroy essential principles firmly resting upon public policy. At that stage of the proceedings the burden was admittedly upon the defendant. Has it ever been lifted or shifted? If so, we cannot see when or where.
It is contended for the defendant that it is exempted by this contract from all loss or damage not arising from its own negligence, and that, therefore, it cannot be required to prove the loss within the excepted classes without requiring it, in effect, to prove its own want of negligence. Even so. If, standing with the burden of proof upon it, it claims a total exemption, it must show every fact necessary to prove that exemption. It is not placed in any better condition than the ordinary defendant merely by the unreasonable extent of its stipulations.
The bill of lading, covering five printed pages, is full of the most stringent stipulations, all in favor of the carrier, among which is the broadside exemption from all risk "of loss or damage from any cause or thing not resulting from the negligence of the agents of said party of the first part." It then provides that, "in case the said party of the first part (the carrier) shall furnish laborers to assist in loading and unloading said stock, they shall be subject to the orders, and deemedemployees, of the said party of the second part while so assisting." It gravely winds up by requiring the shipper, who has shipped nothing but horses and mules, to sign a written agreement that turkeys are reasonably worth only 12 1/2 cents apiece in Nashville. The "reasonableness" of such a bill of lading may be well questioned.
These extraordinary stipulations strongly recall the pertinency (247) of Mr. Justice Bradley's language in delivering the opinion of the Court, in R. R. v. Lockwood, 17 Wallace, 357, where he says on p. 378: "It is a favorite argument in the cases which favor the extension of the carrier's right to contract for exemption from liability, that men must be permitted to make their own agreements, and that it is no concern of the public on what terms an individual chooses to have his goods carried. . . . It is true that the public interest is not affected by individual contracts of the kind referred to. Is not the whole business community affected by holding such contracts valid? If held valid, the advantageous position of the companies exercising the business of common carriers is such that it places it in their power to change the law of common carriers in effect, by introducing new rules of obligation. The carrier and his customers do not stand on a footing of equality. The latter is only one individual of a million. He cannot afford to higgle or *Page 184 
stand out and seek redress in the courts. His business will not admit such a course. He prefers rather to accept any bill of lading, or sign any paper the carrier presents, often, indeed, without knowing what the one or the other contains. In most cases he has no alternative but to do this or abandon his business. In the present case, for example, the freight agent of the company testified that though they made forty or fifty contracts every week like that under consideration, and had carried on the business for years, no other arrangement than this was ever made with any drover. And the reason is obvious enough — if they did not accept this, they must pay the tariff rates. . . . Of course, no drover could afford to pay such tariff rates. This fact is adverted to for the purpose of illustrating how completely in the power of the railroad companies parties are, and how necessary it is to stand firmly by those principles of law by which the public interests are protected. If (248) the customer had any real freedom of choice; if he had a reasonable and practical alternative, and if the employment of the carrier were not a public one, charging him with the duty of accommodating the public in the line of his employment, then, if the customer chose to assume the risk of negligence, it could with more reason be said to be his private affair, and no concern of the public. But the condition of things is entirely different, and especially so under the modified arrangements which the carrying trade has assumed. The business is mostly concentrated in a few powerful corporations, whose position in the body politic enables them to control it. They do in fact control it, and impose such conditions upon travel and transportation as they see fit, which the public is compelled to accept. These circumstances furnish an additional argument, if any were needed, to show that the conditions imposed by common carriers ought not to be adverse (to say the least) to the dictates of public policy and morality. The status and relative position of the parties render any such conditions void. Contracts of common carriers, like those of persons occupying a fiduciary character, giving them a position in which they can take undue advantage of the persons with whom they contract, must rest upon their fairness and reasonableness."
The action of the court below seems to have been based on the opinion of this Court in Smith v. R. R., 64 N.C. 235, which, on careful examination, does not seem to decide the question before us. The general principles were not elaborated, and the opinion was evidently based entirely on the particular facts of the case. There, the exemption claimed was not general, but special, being as to fire only. The contract was proved, and it was shown that the cotton was destroyed by fire. This brought the loss within the exception. What the Court evidently (249) intended to say was that then the burden of proving negligence rested on *Page 185 
the plaintiff. The opinion cities but two authorities, namely, 1 Parson's Contracts, 1, 704 (perhaps meaning Vol. I, p. 704), and Steam Nav. Co. v.Bank, 6 Howard, 344.
In Nav. Co. v. Bank, the question of the burden of the proof of negligence arose only incidentally, but the Court clearly recognized the prior burden of the carrier, on page 383, where it says: "The burden of proof lies on the carrier, and nothing short of an express stipulation by parol or in writing should be permitted to discharge him from duties which the law has annexed to his employment. The exemption from these duties should not depend upon implication or inference, founded on doubtful and conflicting evidence, but should be specific and certain, leaving no room for controversy between the parties."
For the same reasons, the case of Selby v. R. R., 113 N.C. 588, does not conflict with the principles now discussed.
The only case that we can find in our reports that seems to settle the point now in question, and to settle it apparently in favor of the plaintiff, is Mfg. Co. v. R. R., 121 N.C. 514, where this Court has laid down the rule, without dissent, that "among connecting lines of common carriers, that one in whose hands goods are found damaged is presumed to have caused the damage, and the burden is upon it to rebut thepresumption."
For the reasons given above a new trial should be ordered.
We think that our view of the common law is expressly recognized in chapter 46, Laws 1897, entitled, "An act for the better protection of the traveling public," which reads as follows:
"Section 1. That all railroad and steamboat companies doing (250) business in this State shall be required to handle with care all baggage and freight placed with them for transportation, and they shall be liable in damages for any and all injuries to the baggage or freight of persons from whom they have collected fare or charged freight. While the same is under their control, and upon proof of injury to baggage or freight
in the possession or under the control of any such company, it shall bepresumed that the injury was caused by the negligent acts of said company'sagents or servants." While its caption does not fully indicate the scope of the act, we think the words italicized by us are plain and unequivocal in their meaning and effect.
NEW TRIAL.