This is an action to recover damages for injuries to a carload of cattle resulting from delay in transportation. The complaint, among other allegations, contains the following:
"3. That on or about 4 November, 1896, the plaintiffs shipped from Lenoir, N.C. to Hickory, N.C. over the railroad of the Chester and Lenoir Railroad Company, thirty head of cattle; that said cattle were shipped from Lenoir, N.C. on Wednesday, 4 November, 1896, at 2 o'clock a.m., and reached Hickory at about 4 a.m., of the same morning, and were at once turned over to and received by the defendant for further transportation; that defendant company, instead of transporting said cattle promptly and expeditiously, refused to carry (933) them on a through freight train which passed Hickory at 8 o'clock a. m., of the same morning, bound for points in the direction of Norfolk, on the defendant's road, although requested and urged to do so by plaintiffs; but instead, allowed them to remain in the cars of the Chester and Lenoir Railroad Company from 4 o'clock a. m., till 3 o'clock p. m., at which time they were placed in defendant's cars by plaintiff at his own expense, and remained in said car of defendant from 3 o'clock p. m., until 10 o'clock p. m., of the same day, before they were removed from Hickory; that said defendant then carried them on a local freight train, which traveled much more slowly than a through train, instead of transporting them on a through train, as it should have done. That said cattle did not reach Norfolk over defendant's railroad until Saturday, 7 November, 1896, having been on the road nearly or quite three nights and four days, although the distance is less than four hundred miles, as plaintiffs are informed and believe.
4. That plaintiffs allege that defendant company had ample notice of the date upon which the said cattle would be delivered to it for transportation, so as to have had cars ready for their prompt shipment.
The plaintiff further alleged, in substance, that on account of the unreasonable delay in shipment the cattle were injured and lost greatly in weight, and consequently depreciated in price; that he was forced to incur the additional expense of feeding them en route, and keeping them over Sunday at Norfolk; and that he thereby lost what is known as the Saturday market when cattle bring a higher price than at any other time.
These allegations are denied by the defendant on information and belief, who sets up the further defense: "That no notice in (934) writing was given to defendant of any claim for damages to plaintiff's stock, as set forth in said contract, and for the failure to serve such notice, as defendant is advised and believes, plaintiffs are not entitled to recover in this action." *Page 604 
The following are the material facts of the statement of the case on appeal:
"The plaintiffs offered evidence tending to support the allegations of their complaint, among other evidence, that the cattle were shipped from Hickory, N.C. on Wednesday, and were not received in Norfolk until the following Saturday. He admitted the execution of the contract for the shipment of his cattle, which was exhibited to him, and closed his case."
The defendant offered in evidence said contract, which contained, among others, the following stipulations:
"Now, in consideration of said railroad agreeing to transport the above-described live stock at the reduced rate of _____ dollars to Norfolk, and a free passage to the owner or his agent on the train with the stock, the said owner and shipper does hereby assume and release the said railroad from all injury, loss and damage or depreciation which the animal or animals, or either of them, may suffer in consequence of either of them being weak, or escaping, or injuring himself or themselves or each other, or in consequence of overloading, heat, suffocation, fright, viciousness, and from all other damages incidental to railroad transportation which shall not have been caused by the fraud or gross negligence of said railroad company.
"And it is further agreed that as a condition precedent to the right of the owner and shipper to recover any damages for any loss or injury to said live stock, he will give notice in writing of his claim therefor to the agent of the railroad company, actually delivering said . . . (935) to him, whether at the point of destination or at any intermediate point where the same may be actually delivered before said stock is removed from the place of destination above mentioned, or from the place of delivery of the same, and before said stock is intermingled with other stock.
"And this agreement further witnesseth, that said owner and shipper has this day delivered to said company the live stock described about to be transported on the conditions, stipulations and understandings above expressed, which have been explained to and are fully understood by the owner and shipper."
This contract was duly executed by the plaintiffs and by the railroad agent at the point of shipment. The plaintiff admitted that he had not given the notice in writing stipulated for in the above contract.
He testified, however, in rebuttal, that his agent, upon the receipt of the cattle in Norfolk, signed a receipt for the same under protest, owing to their bad condition.
Upon this evidence the defendant moved the court to dismiss the complaint. *Page 605 
Motion refused, and defendant excepted.
Defendant further requested the court to charge the jury that if the jury believed the evidence the plaintiffs are not entitled to recover, and to answer the issue "No."
This motion was refused, and defendant excepted.
The court charged the jury that if they believed the evidence the plaintiffs are entitled to recover such damages to the carload of stock as had been shown by the evidence.
And to this charge of the court the defendant excepted.
The issue submitted was as follows:
Were the plaintiffs endamaged by the negligence of defendant; and if so, in what amount?
The jury answered this issue "Yes, in the sum of $225." The defendant moved for a new trial on the ground of misdirection (936) by the court, and to the refusal of the court to instruct the jury as requested by the defendant, and because the court submitted the case to the jury upon the evidence.
Motion refused, and defendant excepted.
There was a judgment according to the verdict, and from this judgment defendant appealed.
1. The defendant assigns as error the refusal of the court to dismiss the action at the close of the evidence.
2. Because the court refused to charge the jury that if they believed the evidence the plaintiffs are not entitled to recover, and to answer the issue "No."
3. To the charge of the court that if the jury believed the evidence plaintiffs are entitled to recover such damage to their carload of stock as they had shown by his evidence.
4. Because the court refused to grant a new trial.
This case was submitted to us on printed briefs for the plaintiffs, but was argued in behalf of the defendant both orally and by brief. It is perhaps proper to say that almost the entire brief of the defendant was devoted to proving a proposition that we have no disposition to deny, that is, that a common carrier can, by special contract, reasonably limit its common law liability. But we can not admit the assumed corollary that thereby it ceases to be a common carrier or ipso facto reverses the legal burden of proof. It is well established that where the negligence of the defendant is the primary cause of action, it must be alleged and proved by the plaintiff; but *Page 606 
here, it is merely incidental to the cause of action; in fact it arises as a matter of defense. We must not lose sight of the real cause of (937) action, which is the injury resulting from the failure of the defendant to seasonably transport and safely deliver live stock received by it as a common carrier. The plaintiff's case is fully made out when he has shown that the cattle were received by the carrier, and not seasonably and safely delivered, that is, not delivered at all, or delivered in a damaged condition, and after an unreasonable delay. The burden is then upon the defendant, and, if it wishes to escape any part of its common law liability by showing a special contract, it must affirmatively prove such contract, and bring the injury clearly within the terms of its exemption. These principles have been so recently and so fully discussed by this Court in Mitchell v. R. R., 124 N.C. 236, that any further elaboration seems needless, at least for the present. The essential principle is tersely and strongly stated by Chief Justice Faircloth, inManufacturing Co. v. R. R., 121 N.C. 514, where, speaking for a unanimous Court, he says: "Among connecting lines of common carriers, that one in whose hands goods are found damaged is presumed to have caused the damage, and the burden is upon it to rebut the presumption."
The rule is well stated in Greenleaf on Evidence (14 Ed.), sec. 219, in the following language: "And if the acceptance was special, the burden ofproof is still on the carrier to show, not only that the cause of loss was within the terms of the exception, but also that there was on his part nonegligence or want of due care."
That this rule, which at first was seriously questioned, is receiving almost general acceptance, would appear from the recent work of Elliott on Railroads, where the authors say in section 1548, on page 2403: "There is some conflict among the authorities as to the burden of proof in such cases; but the prevailing rule, where the owner or his (938) agent does not go with the stock, is, that when the animals are shown to have been delivered to the carrier in good condition and to have been lost or injured on the way, the burden of proof then rests upon the carrier to show that the loss or injury was not caused by its own negligence." This rule, which is the natural result of the prima facie
liability of the common carrier, is further strengthened by the universal acceptance of the principle that where a particular fact, necessary to be proved, rests peculiarly within the knowledge of a party, upon him rests the burden of proof. 5 A. E. (2 Ed.), 41; Best Evidence, sec. 274; 1 Greenleaf Ev., sec. 79; Starkie Ev., sec. 589; Rice Evidence, sec. 77; R.R. v. U.S., 139 U.S. 560, 567; S. v. McDuffie, 107 N.C. 885, 888;Govan v. Cushing, 111 N.C. 458, 461; Mitchell v. R. R., supra. Some of the earlier cases appear to take the *Page 607 
view that a common carrier ceases to be such when it makes a special contract, and becomes a private carrier for hire. Whatever foundation may have existed for such an idea in the earlier days of the law, when common carriers were private individuals and carried their shipments in wagons or boats on the ordinary public highway, without receiving or asking any special privileges, has long since disappeared. A railroad company is at least a quasi public corporation, exercising one of the highest prerogatives of the sovereign, that of eminent domain. It is purely a creature of the law, and has no existence outside of its public capacity. It is a common carrier by virtue of its charter, and not by any supposed usage or contract with the shipper. Its character as such is fixed by its contract with the State, and can not be waived either by the corporation or the shipper. It may limit its liability to a certain extent by special contract, but can not change its character. All such contracts of limitation, being in derogation of common law, are strictly construed, and never enforced unless shown to be reasonable. Any doubt or ambiguity therein is to be resolved in favor of the shipper, (939) and it has further been held that the burden of proof rested upon the carrier of showing that all such stipulations and exemptions were reasonable. Compania La Flecha v. Brauer, 168 U.S. 104, 118; 4 Elliott Railroads, sec. 1424; Cox v. R. R., 9 A. E. R. R. Cases (N.S.), 591, 600; Texas R. R. v. Reeves, 8 A. E. R. R. Cases (N.S.), 429; 5 A. E. Enc. (2 Ed.), 326. Stipulations in a bill of lading are similar in their nature to conditions in a policy of insurance. It is well settled by the highest authority that if a policy is so drawn as to require interpretation and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured, and against the construction which would limit the liability of the insurer. Insurance Co.v. Coos Co., 151 U.S. 452; London Asso. v. Compania de Moagens doBareiro, 167 U.S. 149.
In the case at bar it does not appear necessary for the plaintiff to resort to the burden of proof, as the unreasonable detention is in itself evidence of negligence. It appears from the evidence that the cattle were four days and three nights, that is eighty-four hours, in reaching their destination, a distance of 400 miles. At the present day, the transportation of live stock over a great trunk line of railway at an average rate of less than five miles per hour can not be considered reasonable diligence in the total absence of explanation.
The only remaining question is whether the failure of the plaintiff to give formal written notice of his loss or intention to demand compensation is an absolute bar to his recovery, if otherwise entitled. We think not. The object of such a stipulation is not to relieve the carrier from its just liability, for such a purpose would be clearly unlawful, but simply *Page 608 
to give it such notice as will enable it by proper investigation (940) to protect itself against unjust claims. It is not denied that the plaintiff signed the receipt for the cattle under protest. These words written upon the receipt would be ample notice to the defendant that the plaintiff intended to enforce his rights. The meaning of those words is too well known in the business world to be capable of misconstruction. In the present instance they clearly meant that the plaintiff objected to receiving the cattle in their damaged condition, but did so under compulsion of circumstances to prevent still further loss, but at the same time retaining all his rights of action against the defendant. If the defendant's agent had desired any more specific notice or information, he might have asked for it after having been put upon notice, but this he did not see fit to do. Even if the protest had been merely verbal and not in writing, the stipulation might well have been deemed to have been waived under the circumstances. It appears from the uncontradicted testimony that the plaintiff suffered the injury and gave actual notice to the defendant of his claim for damages. We do not see why he can not recover. Any other construction would convert what, properly construed, is a reasonable stipulation for the proper protection of the carrier into an instrument of fraud and a shield of wrong. This is so clearly explained by Justice Furches, speaking for the Court, in Wood v. R.R., 118 N.C. 1056, 1063, as to require no further comment. Judgment of the court below is
Affirmed.
Cited: Gardner v. R. R., 127 N.C. 297; Mfg. Co. v. R. R., 128 N.C. 283,284; Bank v. Fidelity Co., ibid., 373; Williams v. R. R., 130 N.C. 124;Hosiery Co. v. R. R., 131 N.C. 240; Parker v. R. R., 133 N.C. 339,346; Davis v. R. R., 145 N.C. 208; Jones v. R. R., 148 N.C. 589; Kimev. R. R., 153 N.C. 400; s. c., 156 N.C. 453; s. c., 160 N.C. 461;McConnell v. R. R., 163 N.C. 508; Phillips v. R. R., 172 N.C. 87, 89.
(941)