CARTER v. WILMINGTON AND WELDON RAILROAD CO.

(Filed November 5, 1901.)

1. CARRIERS—*Freight—Refusal to Receive Freight—Penalties—The Code, Sec. 1964.*

   Under The Code, Sec. 1964, a railroad company refusing to transport cattle is liable to a separate penalty for each animal.

2. EVIDENCE—*Competency—Carriers.*

   In an action to recover of a railroad company a penalty for refusing to transport cattle, a letter written by an agent of the company to a superior officer relative to the tender of the cattle is inadmissible on part of defendant.

ACTION by L. W. Carter and E. G. Mills against the Wilmington and Weldon Railroad Company and others, heard by Judge *W. S. O'B. Robinson* and a jury, at December (Special) Term, 1901, of the Superior Court of COLUMBUS County. From a judgment for the plaintiffs, the defendants appealed.

*J. B. Schulken,* for the plaintiffs.
*Junius Davis,* for the defendants.

DOUGLAS, J. This case was here before on demurrer, being reported in 126 N. C., 437. In view of what we then said, the answers of the jury to the first and third issues have reduced the case as now before us to narrow limits.

Three out of the four exceptions insisted upon by the defendant raised the point that, in order to recover under the statute for separate penalties, it was incumbent upon the plaintiffs to tender the cattle separately. We think that this question was settled in our former decision, and can not now be reopened by a second appeal in the nature of a rehearing.

If it were necessary to tender separately each individual article, in contemplation of law such article would be a distinct shipment; and the provision of the statute (The Code, sec. 1964) saying that "each article refused shall constitute a separate offense," would have no meaning. The following extracts from our former opinion sustain our present view. We said, beginning on page 439: "The defendant contends in effect that the plaintiffs have no cause of action, * * * that but one penalty attaches for the refusal of the entire shipment offered. * * * The statute provides in express terms that each *article* refused shall constitute a *separate offense*, that is, a distinct violation of the law. The penalty attaches for such violation, and for each and every violation thereof." * * *

"To say that 'each article' meant simply the entire shipment offered, would be equivalent to saying that it meant nothing, because it would add nothing to the previous part of the section. To say further that, even if each article constituted a separate offense, the statute did not intend a separate penalty, would impose upon the statute a construction utterly foreign both to its letter and spirit. The object in providing a penalty is clearly to compel the common carrier to perform its duty to the public, not simply to the abstract public, but to each individual. Penalties are made cumulative so as to make it under all circumstances, as far as practicable, to the interest of the carrier to perform its duty. Punishment and compensation are essentially different. The one aims merely to repair the injury done; the other, to prevent its recurrence. Compensation should, under all circumstances, exactly equal the injury; while punishment, to be effective, must exceed the injury, or at least be greater than any possible benefit which can accrue to the offender from a violation of the law. Suppose a large number of cattle were offered for shipment, it might be cheaper for the

carrier to pay a penalty of $50 than to go to any extra expense and trouble to obtain the necessary cars."

"Moreover, the usual and primary meaning of the word 'article' is opposed to the idea that it means the entire shipment." * *, *

"As we are of opinion that each head of cattle was a separate article in contemplation of the statute, the refusal of which was a separate offense, it follows that a separate penalty attached thereto. As there were thirty head of cattle refused, thirty separate penalties were incurred by the defendant."

This seems to us to settle the present case.

Again, we say that this decision refers to the shipment of cattle, where each "article" is necessarily separate, and does not refer, directly or by analogy, to the innumerable small articles that may be enclosed in one package where they can be neither seen nor counted. Such a case is not now before us, but we have no hesitation in saying that there is an essential difference between one nail in a keg of nails and one ox in a drove of cattle.

The shipment appears to have been made in entire good faith, and there is neither proof nor allegation of any fraudulent intent. The main defense seems to have been that all the defendant's available stock-cars were then required for the transportation of two regiments of cavalry; but this issue the jury found against the defendant. Whether the instruction upon that issue can be sustained, we are not called on to decide, as it was favorable to the defendant, and therefore not now under exception.

The defendant contends that it had no facilities for taking care of cattle, but it appears that it had the ordinary pens into which the cattle were driven by the plaintiffs. The law placed upon the defendant the imperative duty of receiving these cattle, and its refusal to receive is the gist of this action. It had five days after receipt in which to ship the

cattle, and did ship them within that time. If in the interval the cattle had suffered from exposure and want of feed through no fault of the defendant, that would have been a defense to be pleaded in an action for damage to the cattle, which would have been essentially different from the one at bar. We have carefully considered the defendant's exception to the exclusion of the letter of Richardson to Divine, and after some hesitation have come to the conclusion that there is no error in such exclusion under the circumstances of this case. This letter was written by the station agent at Whiteville after the beginning of the suit, the sole foundation of which was his own unlawful conduct. While not a party to the suit, he was something more than a witness, and was deeply interested in defending the company from any loss arising from his own conduct, as well as in placing such conduct before his superiors in the light most favorable to himself. We are not passing upon the credibility of the witness, which is for the jury alone, but upon the natural bias, which, consciously or unconsciously, is liable to affect all men under such circumstances.

In any event, we do not see how the defendant has been injured by the exclusion of the letter. The jury found that the plaintiffs did not tender the cattle on August 8, and that finding destroyed half the case. They also found that the defendant was not prevented from furnishing the cattle-car by the exigencies of governmental service. Of this fact Richardson does not appear to have had any personal knowledge; and we do not see how his letter could be used to corroborate Borden, for which purpose, indeed, it does not seem to have been offered. In some respects, the letter tends to corroborate the plaintiffs. It says in part: "These parties were ping, and drove their cattle into the stock-pen here after I informed them that it was impossible to get car that day. They demanded a bill of lading, which of course I refused

to issue, as we have no place to keep stock here." Is not that a practical admission of tender and refusal?

Another significant statement is that made by Borden, a witness for the defendant, who testified as follows: "I am now, and was in August, 1898, superintendent of transportation of the defendant companies. I had charge of the car supply and train service. . A telegram to me in my office in Wilmington from Mr. Lynch at Florence on the 9th of August, 1898, and one from Mr. A. S. Richardson, dated the 10th, asking for a stock-car to be sent to Whiteville station, I sent the stock-car to Whiteville on the 11th *by the first train after I was notified of its importance.*"

In the absence of substantial error, the judgment is

Affirmed.