This case is now before us on a rehearing. It was affirmed by a per curiam judgment on the authority of Pipkin v. R. R.,128 N.C. 615, a case against the same defendant and involving a similar cause of action. The latter case was also decided without an opinion, as it was thought that the principles of law governing the case had been substantially settled. In his petition to rehear the plaintiff says: "It was error to decide this case by a per curiam judgment, without an opinion in writing by the Court, containing (337) its reasons in full." We cannot admit the error so broadly assigned. It is our duty to decide all cases brought before us, but whether a written opinion shall be filed is entirely within our discretion. A failure to do so is in no sense a reflection upon counsel, nor is it any criterion as to the ability of learning with which the case may have been argued. It simply means that we do not think it necessary. It has been seriously questioned whether it would not be better to have fewer written opinions, as general principles may be weakened or confused by multitudinous explanations. If the essential principles upon which a case depends have been already settled, we can add but little, if anything, to what has already been said; while the discussion of questions not essential to its determination, even if argued by counsel, may well be omitted in the interest of time and space. Still, it is proper at all times for counsel to ask for a written opinion when they deem it necessary for the furtherance of justice; but it is equally proper for us to *Page 278 
decline it when we deem it unnecessary. In the present instance, especially in view of the numerous cases depending upon the one at bar, we think it entirely proper that a written opinion should be asked and given. This is especially so in view of the following statement in the petition:
"The principles involved in this decision are of great importance to each and every one of these shippers, as well as to the carriers doing business in this State. It would seem from this judgment as it now stands that this petitioner has been remiss in some particular. If so, a written opinion would enable it to repair its practice, if it is remiss, and provide against a repetition of the circumstances that brought about this and the various other cases brought against it in this respect. Without such a written opinion, this petitioner is powerless to determine (338) wherein it has been remiss, if it has been, for this Court has not enunciated the matter in which the law has been neglected or violated. Your petitioner therefore urges, with all respect, but with emphasis, that an opinion is necessary in this case, not only for a determination of the case at bar, but as a guide for future transactions within this State."
In the discussion of the principles involved in this case we will follow the order in which they appear in the petition. It says:
"Your petitioner respectfully points out the following as questions that arise in the determination of this case, which have not heretofore been passed upon by this Court:
"2. Principles of law not heretofore decided in North Carolina.
"(a) Whether this plaintiff, by sounding his action in tort, can thereby annul and render of no effect the terms of the contract he has made with the carrier."
We do not think that this question is before us; certainly not in the form in which it is stated. It assumes that there was a valid contract existing between the plaintiff and defendant whereby the defendant was relieved from all damages resulting from delay, no matter from what cause such delay might arise. In our opinion, there was no such contract. It is true that the words "subject to delay" were written on the bill of lading, but we do not think that they modified its essential character. If they meant that the melons were accepted for shipment subject to delays arising from causes beyond the control of the carrier, they merely expressed one phase of the carrier's liability under an ordinary "Owner's Risk" bill of lading. If such indorsement was intended to relieve the carrier from liability for delay arising from its own negligence, it would not be enforcible. Rocky Mt. Mills v. R. R., 119 N.C. 693; 56 Am. St., 682;Mitchell v. R. R., 124 N.C. 236; *Page 279 
44 L.R.A., 515; Gardner v. R. R., 127 N.C. 293; Hart v. R. R., 112 U.S. 331; (339) Ins. Co. v. Trans. Co., 117 U.S. 322; Liverpool SteamCo. v. Ins. Co., 129 U.S. 397; Ins. Co. v. Compress Co.,133 U.S. 387; Constable v. Steamship Co., 154 U.S. 51.
In Gardner v. R. R., 127 N.C. 293, the Court says, on page 296: "It is a well-settled rule of law, practically of universal acceptance, that for reasons of public policy a common carrier is not permitted, even by express stipulation, to exempt itself from loss occasioned by its own negligence."
Hale on Bail, and Car., sec. 90, thus lays down the rule: "By express agreement, common carriers may limit their liability to that of ordinary bailees for hire; but they cannot stipulate against liability for negligence, either of themselves or of their agents or servants."
Again, the same author says in section 82: "Even where the loss is caused by a peril against which carriers are not insurers, they are nevertheless liable, if they fail to use reasonable care and diligence to avoid all perils, including the excepted perils."
The first issue was: "Did the defendant exercise due diligence, under all the circumstances, to avoid delay in carrying and delivering plaintiff's melons?" To this the jury answered "No." The burden of this issue was upon the defendant. Mitchell v. R. R., 124 N.C. 236; Hinkle v.R. R., 126 N.C. 932; 78 Am. St., 685, and cases there cited. The rule is clearly laid down in 2 Gr. Ev., sec. 219, as follows: "If the acceptance was special, the burden of proof is still on the carrier to show, not only that the cause of the loss was within the terms of the exception, but also that there was on his part no negligence or want of due care."
The rule is thus stated in 5 A. E. (2 Ed.), 254: "It seems, however, that on proof of a delay in delivery a prima facie case is made out against the carrier, and burden of proof rests upon (340) it to show that the delay was from a cause for which it was not responsible. It rests on the carrier for the additional reason that such facts are peculiarly within the knowledge of the carrier and not easily ascertained by a shipper."
In Hinkle v. R. R., 126 N.C. 932, this Court says on page 938: "This rule, which is the natural result of the prima facie liability of the common carrier, is further strengthened by the universal acceptance of the principle that where a particular fact necessary to be proved rests peculiarly within the knowledge of a party, upon him rests the burden of proof. 5 A. E. (2 Ed.), p. 41; Best on Ev., sec. 274; 1 Greenleaf, sec. 79; Starkie on Ev., sec. 589; Rice on Ev., sec. 77; R. R. v. U.S.,139 U.S. 560; S. v. McDuffie, 107 N.C. 885;Govan v. Cushing, *Page 280 111 N.C. 458; Mitchell v. R. R., supra." In fact, the difficulty, or rather the practical impossibility, of the shipper proving how his goods were lost while in the custody of the carrier led to the adoption of the common-law rule holding the carrier as an insurer. The reason of the rule is thus stated by Holt, C. J., in Coggs v. Bernard, 2 Lord Raymond, 909, 918: "The law charges this person (the common carrier) thus instructed to carry goods against all acts but acts of God and the enemies of the King. For, though the force be ever so great, as if an irresistible multitude of people should rob them, nevertheless he is chargeable. And this is a political establishment, contrived by the policy of the law for the safety of all persons the necessity of whose affairs oblige them to trust these sorts of persons that they may be safe in their ways of dealings; for else these carriers might have an opportunity of undoing all persons that had any dealings with them, or combining with thieves, etc., and yet doing it in such a clandestine manner (341) as would not be possible to be discovered. And this is the reason the law is founded upon that point."
The reason is thus stated in Riley v. Horne, 5 Bing., 217: "when goods are delivered to a carrier they are usually no longer under the eye of the owner. He seldom follows or sends any servant with them to the place of their destination. If they should be lost or injured by the grossest negligence of the carrier or his servants, or stolen by them or by thieves in collusion with them, the owner would be unable to prove either of these causes of loss. His witnesses must be the carrier's servants, and they, knowing that they could not be contradicted, would excuse their masters and themselves. To give due security to property the law has added to that responsibility of a carrier which immediately arises out of his contract to carry for a reward — namely, that of taking all reasonable care of it — the responsibility of an insurer. From his liability as an insurer the carrier is only to be relieved by two things, both so well known to all the country, when they happen, that no person would be so rash as to attempt to prove that they had happened when they had not, namely, the act of God and the King's enemies."
In Roberts v. Turner, 12 Johns., 232, 7 Am. Dec., 311, Spencer, J., says: "The case of a carrier stands upon peculiar grounds. He is held responsible as an insurer of the goods to prevent combinations, chicanery, and fraud."
We have placed upon this bill of lading the only construction that would be legally enforcible; but if there were two legitimate constructions we would be compelled to adopt that most favorable to the shipper, as all such limitations of liability, being in derogation of common law, are strictly construed, and are never enforced unless shown to be reasonable. *Page 281 
This principle is too well settled by our own decisions to require the citation of other authorities. Wood v. R. R., 118 N.C. 1056;Mitchell v. R. R., 124 N.C. 236; Hinkle v. R. R., 126 N.C. 932;Gardner v. R. R., 127 N.C. 293; Mfg. Co. v. R. R., 128 (342) N.C. 280. In Wood v. R. R., 118 N.C. this Court, says, on page 1063: "Such stipulations contained in a contract are a part of the contract, but they do not contain any part of the obligation of the contract. They are conditions in the nature of estoppels, and, when enforced, operate to prevent the enforcement of the obligations of the contracts. Such restrictions, when reasonable, will be sustained. But as they are restrictions of common-law rights and common-law obligations of common carriers, they are not favored by the law."
That such a rule of construction is not peculiar to this State is shown by the recent case of R. R. v. Reiss, 183 U.S. 621, in which the Court says, on page 626: "The bill of lading itself is an elaborate document, bearing on its face evidences of care and deliberation in the formation of the conditions of the liability of the companies using it. The language is chosen by the company for the purpose, among others, of limiting and diminishing their common-law liabilities, and if there be any doubt arising from the language used as to its proper meaning or construction, the words should be construed most strongly against the companies, because their officers or agents prepared the instrument; and as the Court is to interpret such language, it is, as stated by Mr. Justice Harlan, in delivering the opinion of the Court in Bank v. Ins. Co., 95 U.S. 673, `both reasonable and just that its own words should be construed most strongly against itself.' To the same effect is London Assurance Co. v.Companhia, 167 U.S. 149, and Queen of the Pacific, 180 U.S. 49."
In the case at bar it does not appear that the plaintiff received any consideration whatever for the further limitation of liability (if there were any) caused by the indorsement of the words "subject to delay" on the bill of lading, nor does it appear that he was given (343) any alternative other than its acceptance. There was no further reduction of rate beyond that ordinarily charged on a bill of lading at "owner's risk," and it appears that the agent was instructed not to receive perishable freight on any other terms. On this ground alone, if for no other, we think that such a stipulation would be void as being unreasonable and without consideration. What could the plaintiff do with a carload of watermelons at a railway station except ship them on any terms and trust to luck or to law to get back at least some part of their value? The acceptance and shipment of the melons by the defendant were neither a favor nor a concession to the plaintiff, as it was required to do so by law. If it had been, we do not see how he was *Page 282 
benefited either in temper or pocket by being subsequently told that the melons had brought enough to pay the freight. Regarding the public convenience as a dominating motive for the creating of a quasi-public corporation, we may adopt the language of this Court in the well-considered case of Rocky Mount Mills v. R. R., 119 N.C. 693, 56 Am. St., 682, and say "The convenience to him is not perceived."
The petition says: "The second point not heretofore decided by this Court, but apparently approved by this decision, is: (b) Is an extract from a newspaper published in the city of New York, without explanation of its authority or from whom the statements contained are obtained, legitimate evidence to prove negligence of this defendant or its connections?"
As a general proposition of law, disconnected from the facts of this case, we would be inclined to a negative answer without much discussion; but as we think that the extracts in question come clearly within the agreement of counsel, there was no error in their admission. The agreement was as follows: "It is agreed that either party may introduce (344) in evidence, without further proof than the production of the paper, such copies as they may desire of the paper known asThe Producer's Price-Current upon the question of the condition of the `market and market value.'" These terms are by no means synonymous. The term "condition of the market" does not simply mean the market value of melons, but includes the surrounding facts and circumstances that directly tend to affect their value upon the market.
The defendant's petition further says: "A further point presented and not determined by this petition is: (c) When a shipper makes a special contract with a carrier, and thereby agrees that his goods shall be shipped `subject to delay,' does he thereby accept the conditions existing on the carrier's road at the time he makes the contract, or may he, even though he so contracts, complain of conditions then existing and recover for acts of negligence that were committed prior to the making of such special contract, even though the shipper knew of such negligence and conditions at the time?" The point involved in the defendant's question assumes too much and is too broadly stated to admit of a definite answer in this case. All that we can say is that it is the settled ruling of this Court, in accordance with the practically unanimous consensus of authority, that the highest principles of public policy will not permit a common carrier to exempt itself by contract from liability for damage directly resulting from its own negligence.
Again the petition asks: "Section 1964 of The Code makes it obligatory upon all railroad companies to accept freight offered, under penalty of $50 per article for refusal. This being so, is this petitioner entitled *Page 283 
to the five days allowed by section 1967 of The Code before becoming responsible for failure to ship the same?" In our opinion these sections of The Code apply simply to the penalties therein imposed, and are not intended to limit the common-law liability of common carriers. To hold otherwise would put all perishable freights at the mercy (345) of the carrier. These sections were fully considered in Carter v.R. R., 126 N.C. 437, and same case, 129 N.C. 213. As a further error of law, the petition suggests that "This Court apparently overlooked the fact that a contract `subject to delay,' or a contract whereby a shipper agrees that his goods may be subjected to a delay of more than five days, is expressly authorized by section 1967 of The Code." We can only repeat what we have already said, that this section applies only to the penalty imposed; but if its purpose were of wider scope it would not apply to delays arising from the negligence of defendant.
The petition again suggests that "This Court apparently overlooked the fact that the court below charged the jury that it was for them to determine whether the goods in question were shipped on a special contract, and refused to charge that the goods were shipped on such a special contract." We presume that his Honor left the jury to pass, not upon the meaning of the contract, but upon the fact whether the contract, as contended for by the defendant, was agreed to by the plaintiff. In any event, the defendant was not injured by the submission of this question under the construction placed upon the contract by this Court. If the indorsement, "subject to delay," had no legal effect, it made no difference whether or not it was assented to by the plaintiff. The petition further suggests as error that "This Court overlooked the fact that the court below admitted newspaper extracts to prove the existence of a strike in New York, and to prove what was done by the railroad to relieve the situation." We think this exception is met by the agreement of parties to admit the paper as before stated.
The petition again suggests as error that "This Court apparently overlooked the fact that it was error of law to admit the testimony as to a strike and the wages paid employees in New York by other companies, when such information was based on hearsay and the (346) strike occurred before the plaintiff made his shipment under special contract." The defendant contends that this admission was "error at law, both on hearsay ground and as matters tending to confuse the jury and take their attention from the issue."
This exception is the only one that has given us any trouble, but in the view we take of the case it cannot be sustained. The evidence does not appear to have been entirely hearsay, as it apparently referred to what was said and done at a meeting at which the witness was personally *Page 284 
present. It appears to have been suggested by a question asked by the defendant's counsel on cross-examination. It does not refer to the strike in direct terms. In fact, the first allusion to the strike, as far as we can see, is in the direct testimony of Townsend, a witness for the defendant. The strike is directly referred to as the cause of the delay in handling melons in a newspaper article introduced by the defendant, as shown on page 50 of the printed record. As we have said, the defendant lay under the burden of showing that the unreasonable delay in the delivery of the melons and the consequent damage to the shipper did not arise from its own negligence. The plaintiff had made out his case when he showed the shipment of the melons, their unreasonable delay in transit, and the resulting damage. He had no occasion to go into any other question. If the defendant saw fit to attempt to excuse its delay by evidence of a strike it would seem that similar evidence would be equally available to the plaintiff in rebuttal. It was not at all necessary to the plaintiff in any other aspect. As was held in Hinkle v. R. R., supra, the unreasonable delay was not only a breach of contract, but was in itself evidence of negligence.
We may here repeat what was said in Mitchell v. R. R., 124 N.C. 236, on page 239: "It seems to us that the error lies in a (347) misapprehension of the true nature of the bill of lading. It is not an agreement primarily intended to release the common-law liability of the carrier, but, as said in Pollard v. Vinton, 105 U.S. 7, `It is at once a receipt and a contract. In the former character it is an acknowledgment of the receipt of property on board his vessel by the owner of the vessel; in the latter it is a contract to carry safely and deliver.' The safe carriage and delivery are the essential objects of the contract, and it is the duty of every party to a contract to comply with his agreement or show such facts as will excuse his nonperformance. This is especially so where the contract is made in the performance of a public duty.
"It is the duty of a common carrier, irrespective of contract, but subject to reasonable regulations, to accept, safely carry and deliver all goods entrusted to it. If the goods are lost it must show what became of them, and if they are damaged it must prove affirmatively that they were damaged in some way that would relieve it from responsibility. The plaintiff has a prima facie case when he shows the receipt of goods by the carrier, and their nondelivery or delivery in a damaged condition. Any further defense is in the nature of confession and avoidance."
Whether the plaintiff sued in assumpsit upon a breach of contract, or in case for the violation of a common-law duty, or on a tort based on a contract, would not seem to be material under our present system of *Page 285 
Code pleading. His cause of action was the pecuniary loss resulting to him from the damage done to his melons by the negligent and unreasonable delay in their transmission by the common carrier, and this was clearly stated in the complaint.
We have referred principally to our own decisions, because it seemed to us that the questions necessary for the determination of this case had been already settled.
Petition dismissed.
Cited: S. v. Munn, 134 N.C. 682; Everett v. R. R., 138 N.C. 70;McConnell v. R. R., 144 N.C. 90; Winslow v. R. R., 151 N.C. 254;Stringfield v. R. R., 152 N.C. 128; Peanut Co. v. R. R., 155 N.C. 165;Harden v. R. R., 157 N.C. 243; Mule Co. v. R. R., 160 N.C. 223; Kime v.R. R., ib., 461; Bivens v. R. R., 176 N.C. 416.
(348)