JOHN SELBY v. WILMINGTON AND WELDON RAILROAD
COMPANY.

*Common Carriers—Railroads—Special Contract—Shippers—
Damages to Stock—Duty of Carrier as to Providing Cars.*

1. When a shipper of freight waives his privilege to demand of a common carrier the transportation of his freight under the strict rule and requirements of the common law, and for a valuable consideration (the payment of less than the usual tariff charges) allows the transportation company to assume the relation of a carrier under special contract, such contract, in the absence of an allegation of fraud or imposition, must be interpreted according to the ordinary rules of construction and its provisions enforced, unless they are unreasonable and unjust.

2. Where, in consideration of the reduced rates granted him, the shipper of live stock agreed, as a condition precedent to his right to recover any damages for loss or injury to said stock, that he would give notice in writing of his claim thereof to some officer of said company or its nearest station agent, before said stock should be removed from the place of destination or mingled with other stock: *Held*, that such stipulation contravened no sound public policy and was not unreasonable and void.

3. While it may be the duty of a carrier of live stock to provide cars strong enough to safely transport animals that are ordinarily unruly, the law does not require it to detect that some of them are vicious and act accordingly. The vehicle must be suitable for the safe conveyance of ordinary animals of the class, and it is not required that it shall be strong enough to withstand the struggles of some of that class that may be not only unruly, but vicious. Therefore, on a trial of an action for damages to stock while being transported on defendant's cars, the trial Judge erred in instructing the jury that "the car must be sufficiently strong to resist the struggles of the stock, and the company is liable for any loss occasioned by its neglect in this regard, in spite of the fact that the animals are vicious and unruly, upon the principle that it is within its power to provide those which are actually and absolutely sufficient."

CIVIL ACTION, for injuries to live stock while being transported on defendant company's cars, tried before *Shuford, J.*, and a jury, at February Term, 1893, of WILSON Superior Court.

It appeared from the evidence that a car-load of horses and mules were shipped from Richmond, Va., to the plaintiff at Wilson, N. C., and that plaintiff did not accompany the stock, but met them at the depot in Wilson.

His Honor submitted the following issues to the jury, to-wit:

"1. Were the stock described in the complaint injured by the negligence of the defendant?

"2. What damage has the plaintiff sustained by reason of the negligent injury of said stock by the defendant?"

Plaintiff said: "When I first went to unload horses I saw that a slat in the lower half of the door was broken in two. The top part of the broken slat had fallen and had been

taken out, and this lower part was standing straight up in its original position. It looked as if it might have been broken by a horse pawing. There were hairs and blood on the end of the part of the slat left standing. We unloaded the car-load of stock and found that one of the horses was badly cut on one of his front ankles. They were shod in front, but not behind. I kept the horse five or six weeks, and during that time he was very lame and in no condition to sell. I think the horse was damaged to the amount of $75. I think he was injured by pawing out the slat with his fore-foot. There was a mare in the lot which got one of her hind-feet between the slats on the side of the car, and was standing on her forefeet with the hind part of her body entirely suspended by this hindfoot, which was caught between the slats at the bottom of the car and about one-third the way up. The side of the car was planked, and these planks were put close together, and, above that, the car was made or cased with slats. The mare caught her foot above the planked part. The door was made with up-and-down slats, with a cross-piece in the middle. We had to chop this slat in two to get the mare loose. The flesh between the hoof and ankle was wrung off."

Plaintiff testified to injuries to other horses and mules that were in the consignment.

Plaintiff further said: "I think Mr. Farmer, the agent, was present when this stock was unloaded. When I told him this mule was missing, I also told him I had never seen a car-load of stock knocked to pieces so bad in my life. I was not in Richmond when the stock was loaded. I left about 3 o'clock, and the stock was loaded after I left. The stock reached here from 11 to 3 o'clock next day. I made no demand against the company for damages, except I got my attorney to write to them on the 25th of February. I never saw the bill of lading until it was sent here at request of my attorney. The stock was shipped to me from the stables of

Gentry Brothers in Richmond, and they were my agents for that purpose. I don't know whether they or railroad company sent bill of lading here."

Defendant introduced in evidence a bill of lading entitled "Special contract for the shipment of live stock," in which, among other things, it was provided: "That whereas, the Richmond and Petersburg Railroad Company and connecting lines transport live stock only at certain rates, except when in consideration of a reduced rate, the owner and shipper assumes certain risks, specified below: Now in consideration of the said railroad company's agreeing to transport the above described stock at the reduced rate of $35 per car-load, and of a free pass to the owner or his agent on the train with his stock (if shipped in car-load quantities), the said owner and shipper does hereby assume and release the said railroads from all risk of injury which the animals, or any of them, may receive in consequence of either or any of them being wild, unruly or weak, or maiming each other or themselves, or in consequence of heat or suffocation, or other ill effects of being crowded in the cars, or in consequence of being injured by the burning of hay, straw or other material used by the owner for bedding the stock, whether occasioned by any mob, strike or threatened violence to person or property from any source or injury to track or yards, or any or all other causes, whether mentioned or not, and all risk of the escape of any portion of said stock, or loss or damage from any other cause or thing not resulting from the negligence of the agents of said railroads."

The agreement also provided that, "for the consideration before mentioned, said party of the second part further agrees as a condition precedent to his right to recover any damages for loss or injury to said stock, he will give notice in writing of his claim thereof to some officer of said company or its nearest station agent before said stock is removed from the place of destination above mentioned, or from the place

of delivery of the same to said party of the second part, and before such stock is mingled with other stock."

This contract was signed by T. D. M., Agent, for the company, and Gentry Bros. (by J. S. Wheley), owner and shipper.

His Honor charged the jury as follows:

"That, at common law, it is the duty of a common carrier to safely carry and deliver the freight which it undertakes to carry, and that nothing will excuse a safe carriage and delivery except the act of God and the public enemy, but that this rule of the common law only applies when there is no special contract. In this case there is a special contract, and the liability of the defendant is restricted by this special contract to the extent that the provisions of said special contract are reasonable and proper; that the provisions requiring notice of the claim in writing, before the removal of the stock and their mixture with other stock, was not reasonable and was void." Defendant excepted.

"The burden is upon the plaintiff to show that the injury arose from the negligence of the defendant. He insists that he has done so, and that he has shown that the car furnished for transporting said stock was defectively constructed and was unfit for the purpose. The Court charges you that it was the duty of the railroad to furnish a good and safe car for the transportation of said stock, and that if it failed to do so, and the stock was injured by its failure to do so, then it is liable." Defendant excepts.

"The road was required to furnish such a car as would resist the pawing of the animals confined therein, and also their kicking, and if it failed to do so it was liable, and this notwithstanding the special contract, for there is nothing in the special contract restricting its liability on this matter, and if there was it would be void." Defendant excepts.

"If you answer the first issue 'Yes,' you will proceed to assess the damage, and in doing so, assess each horse or mule

separately. You cannot assess the mule that died at more than $100, for the plaintiff, in the special contract, bound himself not to claim more than that amount for any one animal, and this is a reasonable limitation upon the liability of the defendant, and is binding on the plaintiff. As to the horses and mules which were injured less than $100, you may assess that injury at the actual damage done, and add interest thereto from the date of the injury." Defendant excepted to the last sentence, in so far as it authorized damages beyond a proportionate part of $100.

The plaintiff requested the following special instruction, which his Honor gave:

"It is the duty of the defendant railroad company to provide suitable cars for transporting live stock. The car must be sufficiently strong to resist the struggles of the stock, and the company is liable for loss occasioned by their neglect in this regard, in spite of the fact that the animals are vicious and unruly, upon the principle that it is within their power to provide those which are actually and absolutely sufficient." Defendant excepted.

There was a verdict for the plaintiff, and defendant appealed.

*Mr. S. A. Woodard*, for plaintiff.
*Mr. C. B. Aycock*, for defendant (appellant).

BURWELL, J.: The relation between the parties to this action is not that of a common carrier towards a shipper of freight who had chosen to pay the usual tariff charges, and stand upon his rights, and hold the carrier to the performance of its duty under all the strict requirements of the common law. It was his privilege to demand of the carrier the shipment of his stock under those somewhat stringent but not unjust conditions. He has chosen not to avail himself of this privilege, and thus put his animals under the safe-

38

guard established by the law for the protection of those whose property comes to the possession of a common carrier for transportation, but rather, for a valuable consideration, to waive this right of privilege and allow the defendant to assume simply the relation of a carrier of stock under a special contract which, no fraud or imposition being alleged, must be interpreted according to the ordinary rules of construction, and its provisions enforced, unless they are unreasonable and unjust—"if they are not in conflict with sound legal policy." *Express Co.* v. *Caldwell*, 21 Wall., 264.

Among other stipulations contained in the contract was one by which the plaintiff agreed, in consideration of the reduced rates granted "as a condition precedent to his right to recover any damages for loss or injury to said stock," that he would "give notice in writing of his claim thereof to some officer of said company or its nearest station agent before said stock is removed from the place of destination above mentioned, or from the place of the delivery of the same to said party of the second part, and before such stock is mingled with other stock." It seems to us that this condition, imposed upon the plaintiff by a contract of his own making, founded upon a valuable consideration moving to him, contravenes no sound legal policy, and is not unreasonable. It is not in any sense a stipulation that the defendant carrier shall be exempted from the effects of its negligence or the negligence of its servants in the performance of those duties towards the plaintiff assumed in the contract; nor is it a requirement that any injury that has been done to plaintiff's stock while in defendant's care under the terms of the bill of lading shall be *adjusted* in the presence of an officer of the defendant company before the property is removed from the station, and hence the case of *Capehart* v. *Railroad*, 81 N. C., 438, has no application here. We have no stipulation at all as to the fixing of the amount of damage done to plaintiff's property, but simply an agreement that he will,

when about to take his animals from the cars or yard of the defendant, notify the company in writing, if, upon a reasonable examination, he is able to detect any damage done them. Owing to the nature of the property entrusted to the carrier, the difficulty of identifying each animal, and the terms of the contract as regards such damage as might be inflicted by the animals on one another, or might come to them without any fault on the part of the defendant, it seems to us indeed very reasonable that the defendant's agents should have an opportunity then and there to examine the stock and ascertain if they can the cause and the extent of the damage. We have been cited to no authority which, upon examination, seems to hold that such requirement, under the circumstances, is unreasonable. *Rice* v. *Railroad*, 63 Mo., 314; *Goggin* v. *Railroad*, 12 Ks., 416, and other cases, seem fully to sustain the view we take of the matter, and to show that there was error in the charge that the stipulation was not reasonable and was void.

It is stated in the case that his Honor gave the jury the following instruction, which was excepted to: "It is the duty of the defendant company to provide suitable cars for transporting live stock. The car must be sufficiently strong to resist the struggles of the stock, and the company is liable for loss occasioned by its neglect in this regard, in spite of the fact that the animals are vicious and unruly, upon the principle that it is within its power to provide those which are actually and absolutely sufficient."

There was error here also, we think, for while it may be the duty of a carrier that undertakes to ship live stock to provide cars strong enough to safely transport animals that are ordinarily unruly, the law does not impose upon it so hard a task as to detect that some of them are vicious, and act accordingly. The vehicle must be suitable for the safe conveyance of ordinary animals of the class. It is not required that it shall be strong enough to withstand the

struggles of some of that class that may be not only unruly, but vicious.

As there must be a new trial for the error mentioned, we omit consideration of other exceptions taken by defendant.

New Trial.