JONES-LANE COMPANY v. ATLANTIC COAST LINE RAILROAD
COMPANY.

(Filed 28 October, 1908.)

**1. Carriers of Goods — Damage to Stock — Carrier's Possession —
   Liability as Carrier—Evidence—Burden of Proof.**

In an action against a carrier for damages to shipment of stock it was shown, without contradiction, that the carrier's agent could not find the consignee, and procured, without plaintiff's requesting it, a stable keeper to take care of the stock; that the stock was apparently in good order upon arrival, but the next morning one mule was dead—apparently had died from being trampled upon: *Held,* (1) the liability of carriers, as such, continues for a reasonable time after transportation ceases, and it was not error in the trial Judge to instruct the jury, if they believed the evidence, to find that the mule was injured while in the carrier's possession; (2) a *prima facie* case of negligence was made out against the carrier, and the burden was upon the carrier at least to introduce evidence tending to show it had discharged its duty.

**2. Carriers of Goods—Reasonable Stipulations—Damage to Stock—Agreed Valuation.**

A voluntary agreement by the shipper with the carrier, in consideration of a reduction in the rate of freight, that in case of loss or damage to the stock shipped the valuation thereof shall not exceed $100 a head, is valid as fixing in good faith a stipulated and reasonable value for a species of property of uncertain value, concerning which, in case of loss, the carrier would be without evidence.

**3. Carriers of Goods—Damage to Stock—Notice of Claim—Reasonable Stipulations.**

A stipulation in a contract of carriage that, in consideration of a reduction of freight rate for the carriage of stock, the consignee should give notice in writing of any claim for loss or damage to some officer of the carrier or its nearest station agent, before the stock is removed from its place of destination or mingled with other stock, is reasonable and just, intended to prevent fraud and imposition, and therefore valid; though unavailable as a defense in this case, as it is shown that the stock had not been removed from the carrier's possession.

HOKE, J., concurring, *arguendo;* CLARK, C. J., concurring with HOKE, J.

ACTION tried before *W. R. Allen, J.,* and a jury, at May Term, 1908, of CRAVEN, for the recovery of the value of one horse and one mule.

These issues were submitted to the jury:

1. "Was the horse in controversy delivered to the defendant?" Answer: "No."

2. "Was the mule in controversy injured while in possession of defendant?" Answer: "Yes."

3. "If so, was such injury caused by the negligence of the defendant?" Answer: "Yes."

4. "What damage, if any, is plaintiff entitled to recover?" Answer: "Two hundred dollars."

From the judgment rendered the defendant appealed.

*W. D. McIver* and *R. A. Nunn* for plaintiff.
*Moore & Dunn* for defendant.

BROWN, J. Plaintiff shipped a car load of horses and mules by defendant's railway to Washington, N. C. The jury have

found that one of the mules was injured, while in the defendant's possession, by its negligence.

We deem it necessary to notice only a few of the assignments of error.

1. The court charged the jury, if they believed the evidence, to answer the second issue "Yes." The testimony of defendant's agent at Washington establishes the fact that the car load of stock arrived about noon on 11 January; that the agent "could not find plaintiffs and procured Winfield (a stable keeper) to take care of the stock until they came in, in the next day or two." It appears that the stables of plaintiff are at Bath, a town some miles below Washington.

· The agent further testifies that, when unloaded from the car, the stock was apparently in good condition. Lane testifies that he reached Washington next morning and then saw the stock at Winfield's stables; "one mule was dead; looked like he had been trampled and bruised." There is no evidence to the contrary.

We have recently held (in *Poythress v. Railroad,* at this term) that the liability of the carrier (as distinguished from that of a warehouseman) is continued after actual transportation ceases, for a reasonable time during which it remains liable as a carrier for the safety of the property entrusted to it.

Upon the principles laid down in the opinion in that case, and under the facts proven by defendant's agent, as well as Lane, the court did not err in the instruction given, for the mule was injured, if injured at all, while in the possession of the defendant.

There is no evidence in the record, that we can find, supporting defendant's contention in the brief that the stock was delivered to Winfield at plaintiff's request. It was stabled there, on account of the defendant, to give plaintiffs an opportunity to come in and receive it and pay the freight charges on it.

2. We find no error in his Honor's charge on the third issue. We have held in the case of *Jones v. Railroad* (at this term) that where there is proof that the animal was injured while in possession of the carrier a *prima facie* case of negligence is made out, so as to require the submission of the matter to the jury upon all the facts and circumstances in evidence.

The jury are not obliged to find that the carrier is guilty of negligence because the animal is injured while in its possession. The facts and circumstances in evidence may show that the animal was probably injured from other causes than the carrier's neglect of duty, and may cause the jury to exculpate the carrier. But proof of injury received while in the carrier's possession and under its care is sufficient to take the case to the jury, and throws upon the carrier the burden "at least of introducing evidence tending to show that it has discharged its duty." *Meredith v. Railroad,* 137 N. C., 487.

3. The defendant requested the court to charge the jury "that plaintiff's recovery in this action is limited to the value fixed upon the stock at the time it was offered and delivered for shipment, and, if you believe the evidence in this case, this valuation was fixed at $100 per head, and any recovery would be limited to $100 for each animal which may have been lost or damaged in transit." The court declined to give this instruction, and defendant excepted.

The consignor of the stock, acting for the plaintiff, elected to ship the stock under a bill of lading or shipping contract containing the following clauses:

"ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY.

*"Read this contract carefully.*

"NOTICE.—This company has two rates on live stock. Shippers of live stock will take notice that rates of freight and the extent of liability of the company are governed by the valuation which they place thereon. Rates of freight are on file and will be shown by agent on application.

"To the St. Louis and San Francisco Railroad Company:

"The undersigned offers for shipment over your road twenty-five head of horses and mules from Fort Scott, Kan., to Washington, N. C., each head of the estimated weight of . . . . pounds and valued at $100 per head, which valuation is named by me for the purpose of securing a reduced rate of freight on this shipment; and I agree that, in case of loss or damage to same, said valuation 'so named shall be conclusive, should I make any claim for such loss or damage against any carrier over whose line the same may pass. This application is an election on my part to avail myself of a reduced rate by making this shipment under the following contract, limiting the liability of such carrier, instead of shipping the same at a higher rate without such limitations.

"Witness: E. E. WALKER, Erwin Piper Horse and Mule Company.

"The St. Louis and San Francisco Railroad Company accepts this shipment and the above valuation as a basis for fixing the rate of freight thereon.

"ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY,

"By E. E. Sx. W. Agent.

"NOTE.—The rates of freight on live stock are fixed in view of the nature and extent of liability assumed by the carrier, and all kinds of live stock shipped in car lots under a contract similar to the following, limiting the liability of the carrier, are taken at reduced rates; all kinds of live stock will be taken at carrier's risk, if the shipper so elects, at rates provided by the existing tariffs, classifications and under the provisions and conditions relating thereto; and in either event no agent of this company has any power to bind it in any way, in regard to the shipment of live stock, except by written contract."

We have recognized the doctrine, held by nearly all the courts of this country, that a stipulation in a shipping con-

tract that in case of loss or damage the carrier shall not be liable beyond a fixed value agreed upon is valid, when freely and fairly entered upon and when the circumstances indicate that the stipulation as to value is reasonable or based upon a valuable consideration and is not an obvious evasion of the law upon the part of the carrier for the purpose of escaping, in large measure, liability for the consequences of its negligence.

This doctrine is clearly recognized by this Court in *Mitchell v. Railroad,* 124 N. C., 246; *Gardner v. Railroad,* 127 N. C., 293; *Selby v. Railroad,* 113 N. C., 588, and in *Everett v. Railroad,* 138 N. C., 74.

In the *Gardner case* the law is summarized as follows: "A common carrier can make a valid agreement, fixing the value of shipments in case of loss by its negligence, if such agreement be reasonable or based upon a valuable consideration, and it must clearly appear that such was the intention of the parties."

In the *Everett case* the contract was not upheld, as it was unreasonable, and was a plain attempt to escape practically all liability, as the property lost through the carrier's negligence was worth $250 and the valuation fixed upon in the bill of lading was only $30. Nevertheless, the opinion of the Court refers to contracts of the character of the one now under consideration and recognizes their validity. Page 74.

The same observation can be made as to the *Minnesota case,* frequently cited upon the question of the limited liability of carriers under special contract. In that case it is said: "Yet there is no reason why the contracting parties may not in good faith agree upon the value of property presented for transportation or fairly liquidate the damages recoverable in accordance with the supposed value. Such an agreement would not be an abrogation of the requirements of the law, but only the application of the law as it is by the parties themselves to the circumstances of the particular case. But that

the requirements of the law be not evaded and its purposes frustrated, contracts of this kind should be closely scrutinized." *Moulton v. Railroad,* 31 Minn., 89. This statement of the law is sustained by text writers, as well as by innumerable adjudications in the Federal and State courts. Moore on Carriers, p. 349, sec. 31; Hutchison on Carriers, sec. 426, and note 42, where the cases from the Federal courts and twenty-one State courts are collected.

In this case there is no evidence whatever of a purpose upon the part of the carrier to evade liability for its own negligence. On the contrary, the manifest purpose is to agree upon in good faith a stipulated value for a species of property of very uncertain value, and concerning which, in case of loss, the carrier would be without evidence and consequently entirely at the mercy of the shipper.

The contract of shipment gave the owner reduced rates, which is a valuable consideration, and at the same time gave him the option to pay the full charges by law, without limit as to value. The shipper voluntarily chose the former, and he cannot now be allowed to repudiate his contract. That the agreed valuation per capita is reasonable and is not an evasion is manifest. In fact, it appears from the bill of sale of the stock that some animals are valued lower than the stipulated sum, one horse being valued as low as $80.

We are of opinion that his Honor erred in refusing the prayer for instruction.

4. It was agreed in this contract of shipment, in addition to the limited value clause, that, in consideration of the rate granted him as a condition precedent to his right to recover, the consignee would give notice in writing of his claim to some officer of said company or its nearest station agent before the said stock was removed from the place of destination or mingled with other stock. This provision of the contract is inserted for the protection of the carrier, to the end that when the stock has been delivered to the consignee at the

place of destination, if there is any injury or damage, the carrier may have an opportunity for examination before the stock is removed or mingled with other stock. It is a reasonable and just provision, intended to prevent fraud and imposition, and which has been distinctly upheld and enforced by this Court in *Selby v. Railroad,* 113 N. C., 594.

We do not think, however, that it will avail the defendant, under the facts of this case, for the animal, if injured at all, was injured while in the custody of the defendant and before delivery to the plaintiff.

Let the judgment of the Superior Court upon the fourth issue be set aside and the cause remanded to that court, with direction to enter judgment upon the other findings for the stipulated value of $100.

Error.

HOKE, J., concurring: It is the settled law of this State that, in the absence of legislative sanction, a common carrier, in its contract of shipment, cannot stipulate against recovery for a loss or damage occasioned by its own negligence, and it can make no such stipulation as to either a total or partial loss. Speaking to this question, in *Everett v. Railroad,* 138 N. C., 71, the Court said: "It is the law of this State, declared by repeated decisions, that common carriers are not permitted to contract against loss occasioned by their own negligence. They can contract neither for total nor for partial exemption from loss so occasioned. *Capehart v. Railroad,* 81 N. C., 438; *Gardner v. Railroad,* 127 N. C., 293. The same doctrine is very generally accepted in other jurisdictions. It would be an idle thing for the courts to declare the principle that contracts for total exemption from such loss are subversive of public policy and void, and at the same time permit and uphold a partial limitation which could avail to prevent anything like adequate and substantial recovery by the shipper. Therefore it is held that any limitation of liability by contract designed for the purpose is forbidden."

In the rare and exceptional cases when a carrier is allowed, on recovery had for breach of contract of carriage of certain classes of goods, to limit the amount of such recovery to a value fixed and predetermined by the contract of shipment, the rule is, I think, correctly stated in *Everett's case,* as follows: "Such agreements are upheld where, the carrier being without knowledge or notice of the true value, the parties agree upon a valuation of the particular goods shipped, approximating the average value of ordinary goods of like kind, and make such valuation the basis of a just and reasonable shipping rate."

This rule is particularly applicable to shipments of stock in quantities, and eminently just to both parties to such contracts, affording to the shipper a fair and reasonable shipping rate and protecting the carrier from exorbitant and unconscionable recoveries by reason of excessive valuations which it had no opportunity to ascertain or to resist successfully, and for which it has received no adequate compensation. But to permit or uphold such a contract, when the loss arises from negligence, all the conditions suggested must exist. The carrier must be without knowledge or notice of the true value; the valuation must be the fair average valuation of property of like kind, and it must have been made the basis of a fair and reasonable shipping rate.

The rule, as stated, is given only by way of suggestion in *Everett's case, supra,* but is, I think, the principle to be deduced from many well-considered authorities on the subject, both decisions and approved text writers, some of them referred to in the opinion delivered in that case, among others, *Gardner v. Railroad,* 127 N. C., 293. In my judgment, the second headnote of *Gardner's case,* cited with approval in the principal opinion, as follows: "(2) A common carrier can make a valid agreement, fixing the value of shipments, in case of loss by its negligence, if such agreement be reasonable, or based on a valuable consideration, and it must clearly appear

that such was the intention of the parties," is not a correct
digest of the decision rendered by the Court, nor does it cor-
rectly express the rule applicable to the case now considered.
In the opinion the Court thus refers to the question im-
mediately under discussion : "It is a well-settled rule of law,
practically of universal acceptance, that for reasons of public
policy a common carrier is not permitted, even by express
stipulation, to exempt itself from loss occasioned by its own
negligence. *Mitchell v. Railroad,* 124 N. C., 236 ; *Hart v.
Railroad,* 112 U. S., 331 ; *Phœnix Insurance Co. v. Erie & W.
Transp. Co.,* 117 U. S., 322 ; *Liverpool & G. W. Steam Co. v.
Phœnix Insurance Co.,* 129 U. S., 397 ; *California Insurance
Co. v. Union Compress Co.,* 133 U. S., 387, 415 ; *Constable
v. Steamship Co:,* 154 U. S., 51, 62. The measure of such
liability is necessarily the amount of the loss ; and if a com-
mon carrier is permitted to stipulate that it shall be liable
only for an amount greatly less than the value of the prop-
erty so lost—that is, for only a small part of the loss—it is
thereby exempted *pro tanto* from the results of its own negli-
gence. Such a course, if permitted, would practically evade
the decisions of the courts and nullify the settled policy of
the law. We do not mean to say that there are no cases where
a common carrier can make a valid agreement as to the value
of the article shipped, but all such agreements must be reason-
able and based upon a valuable consideration. Moreover,
it must clearly appear that such was the intention of the
parties," citing the case of *Hinkle v. Railroad,* 126 N. C.,
932, 938.

It will thus be seen that the *decision* in *Gardner's case*
was against the claim of exemption from liability for loss
occasioned by the carrier's negligence, and that this second
headnote, stated by the reporter as one of the points decided
in that case, was only made by way of suggestion and should
not be considered as authority for the position stated. On
the contrary, it will appear, by careful examination of the

authorities referred to and others relevant to the subject, that the learned Justice had in mind contracts made by carriers against their common-law liability as insurers—an entirely different proposition—and his statement of such a proposition, in reference to stipulations against negligence, is inaccurate and to some extent misleading. See *Hinkle v. Railroad, supra; Capehart v. Railroad,* 81 N. C., 438.

The present case comes clearly within the rule stated in *Everett's case, supra,* and I therefore concur in the decision made, but have deemed it not improper to write a separate opinion, with a view of showing that the second headnote in *Gardner's case* is not a correct digest of that decision and should not be considered as the law applicable to contracts of this character.