HOKE, J., concurring, arguendo; CLARK, C. J., concurring with HOKE, J.
These issues were submitted to the jury:
1. "Was the horse in controversy delivered to the defendant?" Answer: "No."
2. "Was the mule in controversy injured while in possession of defendant?" Answer: "Yes."
3. "If so, was such injury caused by the negligence of the defendant?" Answer: "Yes."
4. "What damage, if any, is plaintiff entitled to recover?" Answer: "Two hundred dollars."
From the judgment rendered the defendant appealed.
Plaintiff shipped a car load of horses and mules by defendant's railway to Washington, N.C. The jury have found that one of the mules was injured, while in the defendant's (582) possession, by its negligence.
We deem it necessary to notice only a few of the assignments of error.
1. The court charged the jury, if they believed the evidence, to answer the second issue, "Yes." The testimony of the defendant's agent at Washington establishes the fact that the car load of stock arrived about *Page 434 
noon on 11 January; that the agent "could not find plaintiffs and procured Winfield (a stable keeper) to take care of the stock until they came in, in the next day or two." It appears that the stables of plaintiff are at Bath, a town some miles below Washington.
The agent further testifies that, when unloaded from the car, the stock was apparently in good condition. Lane testifies that he reached Washington next morning and then saw the stock at Winfield's stables; "one mule was dead; looked like he had been trampled and bruised." There is no evidence to the contrary.
We have recently held (in Poythress v. R. R., ante, 391) that the liability of the carrier (as distinguished from that of a warehouseman) is continued after actual transportation ceases, for a reasonable time during which it remains liable as a carrier for the safety of the property entrusted to it.
Upon the principles laid down in the opinion in that case, and under the facts proven by defendant's agent, as well as Lane, the court did not err in the instruction given, for the mule was injured, if injured at all, while in the possession of the defendant.
There is no evidence in the record, that we can find, supporting defendant's contention in the brief that the stock was delivered to Winfield at plaintiff's request. It was stabled there, on account of the defendant, to give plaintiffs an opportunity to come in and receive it and pay the freight charges on it.
(583) 2. We find no error in his Honor's charge on the third issue. We have held in the case of Jones v. R. R., ante, 449, that where there is proof that the animal was injured while in possession of the carrier a prima facie case of negligence is made out, so as to require the submission of the matter to the jury upon all the facts and circumstances in evidence.
The jury are not obliged to find that the carrier is guilty of negligence because the animal is injured while in its possession. The facts and circumstances in evidence may show that the animal was probably injured from other causes than the carrier's neglect of duty, and may cause the jury to exculpate the carrier. But proof of injury received while in the carrier's possession and under its care is sufficient to take the case to the jury, and throws upon the carrier the burden "at least of introducing evidence tending to show that it has discharged its duty." Meredith v. R.R., 137 N.C. 487.
3. The defendant requested the court to charge the jury "that plaintiff's recovery in this action is limited to the value fixed upon the stock at the time it was offered and delivered for shipment, and, if you believe the evidence in this case, this valuation was fixed at $100 per head, and *Page 435 
any recovery would be limited to $100 for each animal which may have been lost or damaged in transit." The court declined to give this instruction, and defendant excepted.
The consignor of the stock, acting for the plaintiff, elected to ship the stock under a bill of lading or shipping contract containing the following clauses:
"ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY.
"Read this contract carefully.
"NOTICE. — This company has two rates on live stock. Shippers of live stock will take notice that rates of freight and the extent of liability of the company are governed by the valuation which they place thereon. Rates of freight are on file and will be shown by agent on application.
"To the St. Louis and San Francisco Railroad Company:
"The undersigned offers for shipment over your road twenty-five (584) head of horses and mules from Fort Scott, Kan., to Washington, N.C. each head of the estimated weight of ______ pounds and valued at $100 per head, which valuation is named by me for the purpose of securing a reduced rate of freight on this shipment; and I agree that, in case of loss or damage to same, said valuation so named shall be conclusive, should I make any claim for such loss or damage against any carrier over whose line the same may pass. This application is an election on my part to avail myself of a reduced rate by making this shipment under the following contract, limiting the liability of such carrier, instead of shipping the same at a higher rate without such limitations.
"Witness: E. E. WALKER, Erwin Piper Horse and Mule Company.
"The St. Louis and San Francisco Railroad Company accepts this shipment and the above valuation as a basis for fixing the rate of freight thereon.
 "ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY, "By E. E. Sx. W. Agent.
"NOTE. — The rates of freight on live stock are fixed in view of the nature and extent of liability assumed by the carrier, and all kinds of live stock shipped in car lots under a contract similar to the following, limiting the liability of the carrier, are taken at reduced rates; all kinds of live stock will be taken at carrier's risk, if the shipper so elects, at rates provided by the existing tariffs, classifications and under the provisions and conditions relating thereto; and in either event no agent of this company has any power to bind it in any way, in regard to the shipment of live stock, except by written contract." *Page 436 
We have recognized the doctrine, held by nearly all the courts of this country, that a stipulation in a shipping contract that in case of (585) loss or damage the carrier shall not be liable beyond a fixed value agreed upon is valid, when freely and fairly entered upon and when the circumstances indicate that the stipulation as to value is reasonable or based upon a valuable consideration and is not an obvious evasion of the law upon the part of the carrier for the purpose of escaping, in large measure, liability for the consequences of its negligence.
This doctrine is clearly recognized by this court in Mitchell v. R. R.,124 N.C. 246; Gardner v. R. R., 127 N.C. 293; Selby v. R. R., 113 N.C. 588, and in Everett v. R. R., 138 N.C. 74.
In the Gardner case the law is summarized as follows: "A common carrier can make a valid agreement, fixing the value of shipments in case of loss by its negligence, if such agreement be reasonable or based upon a valuable consideration, and it must clearly appear that such was the intention of the parties."
In the Everett case the contract was not upheld, as it was unreasonable, and was a plain attempt to escape practically all liability, as the property lost through the carrier's negligence was worth $250 and the valuation fixed upon in the bill of lading was only $30. Nevertheless, the opinion of the Court refers to contracts of the character of the one now under consideration and recognizes their validity. Page 74.
The same observation can be made as to the Minnesota case, frequently cited upon the question of the limited liability of carriers under special contract. In that case it is said: "Yet there is no reason why the contracting parties may not in good faith agree upon the value of property presented for transportation or fairly liquidate the damages recoverable in accordance with the supposed value. Such an agreement would not be an abrogation of the requirements of the law, but only the application of the law as it is by the parties themselves to the circumstances of the particular case. But that the requirements of the law be (586) not evaded and its purposes frustrated, contracts of this kind should be closely scrutinized." Moulton v. R. R., 31 Minn. 89. This statement of the law is sustained by text writers, as well as by innumerable adjudications in the Federal and State courts. Moore on Carriers, p. 349, sec. 31; Hutchison on Carriers, sec. 426, and note 42, where the cases from the Federal courts and twenty-one State courts are collected.
In this case there is no evidence whatever of a purpose upon the part of the carrier to evade liability for its own negligence. On the contrary, the manifest purpose is to agree upon in good faith a stipulated value for a species of property of very uncertain value, and concerning which, *Page 437 
in case of loss, the carrier would be without evidence and consequently entirely at the mercy of the shipper.
The contract of shipment gave the owner reduced rates, which is a valuable consideration, and at the same time gave him the option to pay the full charges by law, without limit as to value. The shipper voluntarily chose the former, and he cannot now be allowed to repudiate his contract. That the agreed valuation per capita is reasonable and is not an evasion is manifest. In fact, it appears from the bill of sale of the stock that some animals are valued lower than the stipulated sum, one horse being valued as low as $80.
We are of opinion that his Honor erred in refusing the prayer for instruction.
4. It was agreed in this contract of shipment, in addition to the limited value clause, that in consideration of the rate granted him as a condition precedent to his right to recover, the consignee would give notice in writing of his claim to some officer of said company or its nearest station agent before the said stock was removed from the place of destination or mingled with other stock. This provision of the contract is inserted for the protection of the carrier, to the end that when the stock has been delivered to the consignee at the place of destination, if there is any injury or damage, the carrier may have an opportunity (587) for examination before the stock is removed or mingled with other stock. It is a reasonable and just provision, intended to prevent fraud and imposition, and which has been distinctly upheld and enforced by this Court in Selby v. R. R., 113 N.C. 594.
We do not think, however, that it will avail the defendant, under the facts of this case, for the animal, if injured at all, was injured while in the custody of the defendant and before delivery to the plaintiff.
Let the judgment of the Superior Court upon the fourth issue be set aside and the cause remanded to that court, with direction to enter judgment upon the other findings for the stipulated value of $100.
Error.