H. G. KIME v. SOUTHERN RAILWAY COMPANY.

(Filed 10 November, 1910.)

1. Nonsuit—Evidence—How Construed.

On a motion to nonsuit, the evidence of the plaintiff must be accepted as true, and considered in the light most favorable to him.

2. Carriers of Freight — Bill of Lading — Live Stock — Damages — Stipulation—Reasonable Notice.

The purpose of the stipulation in a live stock bill of lading requiring formal written notice to be given the carrier of his loss and intention to demand compensation before removing the stock from the carrier's premises does not relieve the carrier of its liability for negligence, but is simply to give such notice as will enable it to protect itself from fraudulent or unjust claims.

3. Same—Exceptions.

The failure to give the carrier the formal written notice of claim for damage to stock through its negligence, shipped under and required by its live stock bill of lading, does not bar a recovery when it appears that the conductor had knowledge thereof while in transit; that the absence of the agent from the station at destination prevented the required notice from being given him, and the stock was removed some two hundred yards from the depot and there examined and inspected by the carrier's inspector before they were intermingled with other live stock. *Jones v. R. R.*, 148 N. C., 580, cited and approved.

APPPAL from *W. J. Adams, J.*, at the May Term, 1910, of ALAMANCE.

The facts are sufficiently stated in the opinion of the Court.

*W. H. Carroll* for plaintiff.
*Parker & Parker* and *W. B. Rodman* for defendant.

CLARK, C. J.   This was an action for damages to a carload of horses while in transit from Richmond, Va., to Burlington, N. C., caused by the negligence of the defendant.   The jury found that the horses had been injured by the negligence of the defendant, and assessed the damages at $300.   The plaintiff admits in his evidence that on the afternoon when he unloaded the said horses at Burlington, N. C., he did not give any notice to the agent of the defendant, informing him of said injuries or of his intention of making a claim for said damages.   His excuse for not doing so was that the agent had left the depot, and could not be found, and the agent admits that he was not at the depot when the horses were unloaded.   The evidence is uncontradicted that said stock was removed from the premises of the defendant to the stables of the plaintiff, about 200 yards away, and there kept separate and apart from other stock until both the agent at Burlington and the stock inspector for the defendant company had ample opportunity to examine and both of them did actually examine the injured stock.   The conductor of the train which brought the carload of horses to Burlington admitted that he had notice of the injuries before the horses were unloaded, that he saw one horse with his legs through the slats of the car, and stopped the train at request of plaintiff, so that the leg could be extricated, but made no attempt to further ascertain the extent of the injuries sustained by said horses.

The first two assignments of error are to the failure of the court to nonsuit the plaintiff.   It is well settled that on a motion to nonsuit, the evidence of the plaintiff must be accepted as true, and considered in the light most favorable to him.   *Hopkins v. R. R.,* 131 N. C., 463; *Snyder v. Newell,* 132 N. C., 614. There was plenary evidence to submit the case to the jury upon the first issue whether the stock were injured by the negligence of the defendant.

The case turns upon the other two assignments of error which raise the question whether the failure of the plaintiff to give formal written notice of his loss and intention to demand compensation before removing the stock from defendant's premises is an absolute bar to his recovery, if otherwise entitled.   The object of such stipulation is not to relieve the carrier of its lia-

bility for negligence, but simply to give such notice as will enable it by proper investigation to protect itself from fraudulent or unjust claims. *Hinkle v. R. R.,* 126 N. C., 939. The defendant does not claim that any disadvantage has come to it for lack of such notice, for it had ample opportunity to make full investigation, and in fact did make it before the stock was intermingled with the other stock. Besides, the notice can be given orally as well as in writing. The conductor had such notice before the stock was unloaded. It was the defendant's own fault that the agent was not at the depot when the stock was unloaded, and notice both oral and written was given him as soon as he could be found, and before the stock were intermingled with the other stock.

It was held in *Wood v. R. R.,* 118 N. C., 1063, that such stipulations "are conditions in the nature of estoppels, and when enforced, operate to prevent the enforcement of the obligations of the contract. Such restrictions, when reasonable, will be sustained. But as they are restrictions upon the common law rights of the obligations of common carriers, they are not favored by the law." To same purport Lawson Carriers, 114, 115.

Here indeed the objection cannot be raised of want of notice because the horses were injured while in the custody of the defendant, which had full notice thereof, through its conductor, and the complaint to him of the plaintiff before the horses were unloaded. *Jones v. R. R.,* 148 N. C., 587; *Breeding Asso. v. R. R.,* 152 N. C., 345.

We fully endorse the ruling in *Austin v. R. R.,* 151 N. C., 137, that a stipulation in a bill of lading requiring notice of a claim for damages to be given the carrier before the live stock is removed or intermingled with other live stock, is a reasonable regulation to protect carriers against false or unjust claims, by affording them an opportunity for examination   An exception to such stipulation was recognized in *Jones v. R. R.,* 148 N. C., 580, on the facts of that case. The facts in this case are still stronger, for here the company had notice through its conductor of the injuries before unloading; notice could not be given to the agent at the time because of his absence; the stock were removed only 200 yards, and notice was given to the agent

as soon as he could be found, and the stock were examined by him and the stock inspector before they were intermingled with other live stock.

No error.