H. G. KIME v. SOUTHERN RAILWAY COMPANY.

(Filed 1 November, 1911.)

1. Carriers of Goods—Live Stock—Damages—Stipulated Notice—Knowledge of Agent—Liability of Carriers.

When by reason of the negligence of the carrier a shipment of horses is injured in transportation under its live-stock bill of lading, the carrier is liable in damages, notwithstanding the notice required by its bill of lading has not been given in accordance with its terms, *i. e.*, "the claim for such loss or damage shall be made in writing, verified by the affidavit of the shipper or his agent, and delivered to an authorized officer or agent of the carrier within five days from the time said stock is removed from the car, etc.," if the proper agent of the defendant knew of the injury to the live stock at the time they were being unloaded from the car.

2. Same—Evidence—Questions for Jury.

It is some evidence of notice to a carrier of the damaged condition of horses it had transported under its usual live-stock bill of lading, that its depot agent was standing in such position near the car that the horses would pass before him while being unloaded, and that they were covered with perspiration, were in a suffocated condition, very weak, and that instead of leading them in the usual manner, they had to be taken by the tail and hip and steadied down the gangway to keep them from falling.

APPEAL from *Daniels, J.*, at May Term, 1911, of ALAMANCE.

This is an action to recover damages for injury to stock transported by the defendant railroad.

The plaintiff offered evidence tending to prove that twenty-one horses and three mules were received by the defendant from a connecting common carrier, and that they were carried in an old stock car which had been worked over; that the ventilating windows and doors were closed up tightly with slats and the car rendered almost air-tight, being without ventilation and unsuitable and unfit for the transportation of live stock; and that they were injured thereby while in possession of the defendant.

The bill of lading covering the shipment was introduced in evidence, and, among other things, it contained the following stipulations:

(1) No claim for damages which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier or sued for in any court by the said shipper, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the said shipper or his agent, and delivered to an authorized officer or agent of the said carrier within five days from the time said stock is removed from said car or cars; and that if any loss or damage occurs upon the line of a connecting carrier, then such carrier shall not be liable unless a claim is made in like manner, and delivered in like time, to some proper officer or agent of the carrier on whose line the loss or injury occurs.

(2) The said shipper or the consignee is to pay the freight charges thereon to the said carrier at the rate of $45 per carload, which is the lower published tariff rate, based upon the express condition that the carrier assumes liability on the said live stock to the extent only of the following agreed valuation, upon which valuation is based the rate charged for the transportation of the said animals, and beyond which valuation neither the said carrier nor any connecting carrier shall be liable in any event, whether the loss or damage occur through the negligence of the said carrier or connecting carriers, or their employees or otherwise: "If horses or mules, not exceeding $100 each."

It was admitted that the plaintiff did not give to the defendant written notice of his claim for damages; but he contended that this was unnecessary, as the agent of the defendant was present when the horses and mules were unloaded, and saw them and knew of the injury to them.

The following verdict was returned by the jury:

1. Was plaintiff's stock injured by the negligence of the defendant company, as alleged in the complaint? Answer: Yes.

2. If so, what amount of damages has the plaintiff sustained on account of said negligence and injury? Answer: $475.

3. Did the plaintiff comply with the contract of shipment as to the giving of notice to defendant as to his claim for damages? Answer: No.

Judgment was entered upon the verdict in favor of the defendant, and the plaintiff excepted and appealed.

*W. H. Carroll for plaintiff.*
*Parker & Parker for defendant.*

ALLEN, J. The ruling of the learned judge, before whom this case was tried, granting the motion of the defendant for judgment upon the verdict, is based upon the answer to the third issue, he being of opinion that the failure of the plaintiff to give notice to defendant of the injury to the stock is fatal to his right of action.

He correctly held, in accordance with our authorities, that the provision in the bill of lading requiring notice was valid, and that the failure to give written notice would not prevent a recovery by the plaintiff, if the agent of the defendant knew of the injury to the horses and mules at the time they were being unloaded. *Selby v. R. R.,* 113 N. C., 588; *Jones v. R. R.,* 148 N. C., 586; *Austin v. R. R.,* 151 N. C., 137; *Kime v. R. R.,* 153 N. C., 400.

He was, however, further of opinion, and so charged the jury, that there was no evidence "that the agent of the defendant saw or knew that it (the stock) was injured," and directed the jury to answer the third issue "No," if the evidence of the witness for the plaintiff was believed; and in this, we think, there was error.

The plaintiff was a witness in his own behalf,. and testified that he was present when the stock was unloaded at Burlington, and that Mr. Ray, the depot agent, was also present; that the horses and mules were in a suffocated condition, and that the perspiration was on them like they had come out of a river; that they were out of breath and very weak, and that the boys who were helping to unload had to take them by the tails and hips and steady them; that they did not lead them as was usually done, but had to steady them and lead them down the gangway to keep them from falling; that Mr. Ray, the agent, was standing on the platform when they were moved away.

He was then asked the following questions:

Q. Was he in a position to see the horses? A. Yes, sir; good as I could.

Q. How close were the horses to Mr. Ray? A. They had to come right by the side of him.

Q. How many feet? A. Something like six or eight feet.

Q. That was when they came out? A. Yes, sir.

If this evidence is believed, the condition of the stock was such that it would necessarily attract attention, and the agent was so situated that he could scarcely fail to observe them.

In our opinion, this is some evidence that he saw the horses and mules, and knew they were injured.

The question is also raised on the record as to the effect of the valuation clause in the bill of lading, but as this is considered in another case at this term, and the facts bearing on this controversy may be more fully developed on another trial, we refrain from discussing it.

For the error pointed out, a new trial is ordered.

New trial.