H. G. KIME v. SOUTHERN RAILWAY COMPANY.

(Filed 20 November, 1912.)

1. Carriers of Goods—Live-stock Bill of Lading—Owner's Acceptance—Delivering Carrier—Negligence.

A common carrier may not make a valid contract which will have the effect of relieving it from liability; and irrespective of the ownership of the car, it cannot relieve itself from liability for damages to a car-load of live stock it has received from its connecting line, in good condition, but in an unsuitable car, and delivers them in bad condition, by reason of a requirement in the original bill of lading that the shipper must inspect the car and reject it if unsuitable.

2. Carriers of Goods—Live-stock Bill of Lading—Written Notice—Actual Notice.

That the requirement that the written notice provided for in a carrier's live-stock bill of lading is not necessary under the circumstances of this case, see s. c., 156 N. C., 451.

APPEAL by defendant from *Carter, J.,* at May Term, 1912, of ALAMANCE.

The plaintiff brought this action to recover damages for negligent injuries alleged to have been done to certain horses and mules belonging to plaintiff while in transit from Richmond, Va., to Burlington, N. C., and states in his complaint two grounds of actionable negligence on the part of the defendant company: First, for receiving from its connecting carrier a car loaded with live stock which was unfit and unsuitable for the shipment of such stock, without proper inspection; and, second and principally, for its careless and negligent transportation of said live stock after so receiving it, while in transit over its line from Richmond to Burlington, N. C., without giving said car and the stock contained therein reasonable and proper attention while in transit; and he further alleges that, on account of such negligence and want of care, three valuable horses loaded on said car died soon after their arrival at the point of destination, and plaintiff was put to great cost and unnecessary expense on account of said negligence in treating, caring for, and curing the other horses and mules before they could be put in a condition to be placed upon the market. The particular facts were these: On 20 January, 1909, the defendant company received from the Richmond, Fredericksburg and Potomac Railroad Company a car, as described in the complaint, loaded with 21 horses and 3 mules for shipment to Burlington, N. C., as the property of the plaintiff. All of said horses were in good condition when they were loaded at Richmond, Va., and the plaintiff paid to the defendant company at Burlington, N. C., the full freight charges required of him for the shipment, from the very place of making the purchase of the horses and mules to Burlington, N. C. The defendant company received said shipment in an old stock car that had been worked over so as to be suitable for the shipment of shelled corn. The sides and ends, and all ventilating windows and doors, were closed up tightly with slats and made practically air-tight, absolutely unfit, even in the coldest season of the year, for the shipment of live stock. The defendant company knew live stock was on this car, and without inspecting the car, and without attending to it while in

transit, by removing a few of the slats so as to give proper ventilation, it undertook to convey, and did convey, said horses and mules in this car from Richmond, Va., to Burlington, N. C., and while said car was in transit between these two points the defendant company failed and neglected to give said live stock any attention at all, the car being in its sole possession and control. That by reason of said negligence and want of care while in transit, the stock arrived at Burlington, N. C., in a suffocated and smothered condition. That this proceeded from the want of care in not giving said horses and mules proper ventilation or sufficient breathing conditions. That with the slightest care, and with little expense, a few slats might have been removed and the stock could have been safely delivered. As the proximate result of defendant's alleged negligence, plaintiff lost three of the horses, for which he had just paid $175 each, and sustained other damages, as above set forth. The jury returned the following verdict:

1. Was plaintiff's stock injured by the negligence of the defendant company, as alleged in the complaint? Answer: Yes.

2. If so, what amount of damages did plaintiff sustain on account of said negligence and injury? Answer: Yes; $475.

3. Did the defendant at the time of the delivery of the stock have actual notice of the damaged condition of said stock? Answer: Yes.

Judgment was entered on the verdict, and defendant appealed.

*W. H. Carroll for plaintiff.*
*Parker & Parker for defendant.*

WALKER, J., after stating the case: This cause was before us at a former term, and is reported in 156 N. C., 451. The case as now presented to us is not substantially different from the one which was here on the first appeal, though the facts have been more fully developed. The defendant argues, because the car, in the same condition as when it arrived at Burlington, was received by it from a connecting carrier at Richmond, Va., in the course of transit from the initial point to its destination at Burlington, N. C., that it was relieved of any duty of care, and exempted from any liability for failure to exercise proper super-

vision of the car and care for the horses and mules contained therein, and was not required to make inspection of the car to see if it was in proper condition for the reasonable comfort and well-being of the animals, because, as it alleges, the original shipper was under obligation, by special agreement, to examine the car and pass upon its suitability for the transportation, and to accept it as sufficient or reject it as insufficient for that purpose, and that defendant was not to be liable for any damages sustained by injuries to the stock due "to the insufficiency or defective condition of the body of said car." It also defends' upon the ground that plaintiff was required by the contract of shipment, as shown in the bill of lading, to give notice of his claim or damage within five days after the stock was removed from the car. There is also a stipulation exempting the carrier from damages caused by injuries to the stock from suffocation or from almost any other imaginable cause.

We do not think these special clauses of exemption from liability for its own negligence, however gross or inexcusable it may be, can have the effect, in law, of relieving the carrier from the exercise of due and proper care while the animals were being transported over its line, for while a common carrier may, under certain well-defined circumstances, relieve itself by contract from its common-law liability, it cannot so relieve itself from responsibility for its own negligence, which has proximately caused an injury or loss to the shipper. It is said in 6 Cyc., p. 441: "A general stipulation that the shipper has examined the car in which the stock is shipped, and accepts it as suitable and sufficient, will not estop him from recovering for injuries due to a defective car, inasmuch as the carrier cannot limit his common-law liability so as to exempt himself from the consequences of his own negligence." The case of *R. R. v. Dies,* 91 Tenn., 177, is cited in support of the text, and that case decided that "A common carrier is not protected against liability for loss of goods resulting from defects in car, the existence of which affords evidence of negligence, by a stipulation in the bill of lading, accepted by the shipper, to the effect that he had examined the car for himself, and found it in good order, and accepted it as 'suitable and sufficient,' for the purpose of his shipment."

The Court went further in that case, and held that a common carrier is liable for loss of goods resulting from defects in a car used for transportation, the existence of which imply negligence, although the car belonged to another, and was procured by the carrier for the particular shipment at the special request of the shipper, upon his paying the additional expense, and the shipment was made in its then condition—the car being of a kind acceptable to the carrier, and commonly used in making like shipments. The carrier cannot escape liability by carrying the freight in a car furnished or owned by another company. With respect to the shipment and the special car, it is still a common carrier, and it is a matter of no importance who owned or furnished or paid for the particular car into which the stock had been loaded. *R. R. v. Dies, supra; Railway v. Ray,* 102 U. S., 452; *R. R. v. Katzenborger,* 16 Lea, 380. In *Railway v. Silegman,* 23 S. W. Rep., 298, it was held that a stipulation in a bill of lading that a shipper accepts the cars furnished, cannot prevent his showing that they were not suitable, as this would be an attempt to limit the carrier's duty. ·As to the duty of the carrier in the shipment of stock, see 6 Cyc., 437 *et seq.* It would be unjust and unreasonable for a carrier thus to be relieved of ·liability, when he has charge and control of the train of which the particular car is a part, and when the animals have been intrusted to his care for safe transportation and delivery to the consignee. If, during the journey, the stock require special care and attention, especially where the contingency has arisen from a defective car, the carrier should put himself in the place of the owner and bestow that degree of care upon them which the situation would reasonably suggest as proper under the circumstances. 2 Hutchison on Carriers (1906), sec. 646 (324), and page 712. We held in *Hinkle v. R. R.,* 126 N. C., 932, approving the rule as stated in Greenleaf on Evidence (14 Ed.), sec. 219, that "if the acceptance was special, the burden of proof is still on the carrier to show, not only that the cause of loss was within the terms of the exception, but also that there was on his part no negligence or want of due care." *Smith v. R. R.,* 64 N. C., 235; *Parker v. R. R.,* 133 N. C., 336; *Gardner v.*

*R. R.,* 127 N. C., 293; *Stringfield v. R. R.,* 152 N. C., 125. We have held that there is a duty resting upon the carrier to reasonably inspect cars received from connecting carriers to be operated over its road. *Leak v. R. R.,* 124 N. C., 455.

We now hold, therefore, that the clauses of the contract by which it is attempted to relieve the carrier of liability for negligence are unreasonable and cannot be upheld, so far as this particular shipment is concerned. The horses and mules were in good condition when delivered to defendant for transportation over its line, and when they were unloaded at Burlington it appears that they had been "smothered and suffocated" in the close car for the want of any ventilation; that they were drenched with perspiration and so greatly weakened and debilitated that they had to be steadied while being removed from the car, in order to prevent their falling from sheer lack of sufficient strength to stand on their feet. Some were "out of breath." The description of the condition of these animals when they were taken from the car is so shocking that we wonder why the ordinary dictates of humanity did not induce a different course on the part of the carrier, without regard to the question of legal duty. It is a plain case of negligence, for which the defendant is liable to plaintiff in damages.

The law in regard to the duties and liabilities of a carrier in the receipt, transportation, and delivery of goods is so fully and clearly discussed by *Justice Ashe* in *Capehart v. R. R.,* 81 N. C., 438, and the decision applies so peculiarly and closely to the facts of this case, that we may well rest our conclusion upon what is therein said by him, and unanimously approved by the Court of which he was such a learned and distinguished member, noted for his singularly clear and forceful statement of legal principles in their application to the case at hand. After observing that special agreements or clauses in bills of lading exempting carriers from losses by fire and for loss or damage to the shipper's employees, or those imposing the risks of transportation upon the shipper, though general and broad in their terms and literally sufficient to embrace every description of risk incident to the journey, must have a fair and reasonable construction and be restricted within just and proper limits, so that

they may not be regarded as stipulating for exemption for willful misconduct, gross negligence, or even a want of ordinary care, approving what is decided in *Navigation Co. v. Bank,* 6 How. (U. S.), 344, from which is taken the following statement: "Although he (the carrier) was allowed to exempt himself from losses arising out of events and accidents, against which he was a sort of insurer, yet as he had undertaken to carry the goods from one place to another, he was deemed to have incurred the same degree of responsibility as that which attaches to a private person engaged casually in the like occupation, and was, therefore, bound to use ordinary care in the custody of the goods and their delivery." [1] After commenting upon the stipulation as to exemption from loss by fire, the requirement as to thirty days notice by the shipper of his claim for damages, and other special exceptions and exculpatory clauses in bills of lading, *Justice Ashe* refers to *Smith v. R. R.,* 64 N. C., 235, and expressly approves the principle as thus stated in that case: "Although a common carrier cannot, by a general notice to such effect, free itself from all liability for property by it transported, yet by notice brought to the knowledge of the owner it may reasonably qualify its liability as common carrier, and in such case it will remain liable for want of ordinary care, *i. e.,* negligence," citing *Glenn v. R. R.,* 63 N. C., 510; *Wyld v. Pinkford,* 8 Mees. and Welsby, 443; *Bodenham v. Bennett,* 4 Price, 31; *Birkett v. Willan,* 2 Barn and Ald., 356; *Bank v. Express Co.,* 93 U. S., 174; *R. R. v. Bauldauff,* 16 Penn. St., 67, and numerous other cases. The case of *Capehart v. R. R.* sums up the law as follows:

"1. That a common carrier, being an insurer against all losses and damages except those occurring from the act of God or the public enemy, may by special notice brought to the knowledge of the owner of goods delivered for transportation, or by contract, restrict his liability as an insurer, where there is no negligence on his part.

"2. That he cannot by contract even limit his responsibility for loss or damage resulting from his want of the due exercise of ordinary care."

"And now that railways have become so numerous, and as carriers have absorbed so much of that class of business which

is so important to our increasing commerce and the more frequent intercourse of our people, to hold a different doctrine would lead to the abolition of those safeguards of life and property which public policy demands shall be preserved and protected." *Selby v. R. R.,* 113 N. C., 588; *Whitehead v. R. R.,* 87 N. C., 255.

In the cases above mentioned, the courts were not considering the question of limiting the amount of recovery by fixing in advance, not arbitrarily, but by reasonable agreement, the value of stock per head, or the value of other kinds of property, and were merely referring to the liability of the carrier for any loss resulting from negligence on his part. *Everett v. R. R.,* 138 N. C., 68.

The question as to the validity of the clause restricting the recovery to the agreed value, per head, of the stock, which was $100 each, does not arise in this case, as the jury were instructed to allow only that amount, and plaintiff did not appeal. The point as to the five days notice of the plaintiff's claim is eliminated by the finding of the jury, under proper instructions from the court, that defendant, by its duly authorized freight agent, had actual notice of the condition of the horses and mules and of the plaintiff's claim. This finding was made under a charge from the court in exact accordance with our decision upon that question when the case was here before. There was not only evidence, but strong evidence, to warrant the finding, as the agent of the defendant was standing by, and within 8 or 10 feet, when the stock was being unloaded, and viewing, if not superintending, the work of discharging the freight. *Kime v. R. R.,* 156 N. C., 451, and 153 N. C., 398. The validity of the clause as to five days notice of the shipper's claim for loss is not, therefore, involved in this appeal.

There are other exceptions, but they are substantially covered by what we have said in regard to those discussed by us and selected as the principal ones in the case. None of the exceptions have impressed us as being meritorious.

No error.