Civil action to recover damages for negligent injury to an interstate shipment of live stock over the defendant Louisville and Nashville Railroad, the initial carrier, and over the Seaboard Air Line Railway, the connecting and delivering carrier. The Louisville and Nashville Railroad, the initial carrier, is the sole defendant in this cause, the Seaboard Air Line Railway not being made a party thereto.
The live stock reached Wilmington on the night of 10 March and was unloaded by plaintiff and its employee and delivered near midnight *Page 409 
to plaintiff by a watchman of the delivering carrier. If stock came in after 12 o'clock at night the watchman usually delivered it. No written notice was given to the delivering carrier that there was (351) any injury at the time of delivery. Plaintiff was told by his negro hostler, Bill Schloss, in the presence of the watchman, that the stock could not be examined there, and the watchman said: "You take them to your barn, and I will come down in the morning and we will examine them over." On the next day, or on the second day, the 12th, the defendant was called up over the phone, and Meade, an agent, was requested to examine the stock, and he, going to the place of business of plaintiff on the 12th, made an examination and noted on the freight bill the following: "Examined 3-12-12. Found one gray mule, left hind hock cut; one black mule, left hind leg cut; one small bay mare, front leg cut; one black mare and one black horse sick."
The bill of lading under which the shipment was made contains the usual provision requiring written notice of claim for damages to be given before the stock is removed from the place of destination.
The defendant objected to the evidence tending to prove a written notice of the claim, and also moved for judgment of nonsuit at the conclusion of the evidence, upon the ground that as it was an interstate shipment the action could not be maintained without proof of a written notice.
The defendant requested his Honor to give the following instruction, which was refused, and the defendant excepted: "That in the shipment of live stock, if the said live stock, being loaded in a single car, were maimed, bruised, or otherwise injured by trampling upon, pawing or kicking each other, that is a damage and risk that the shipper assumes, under the bill of lading put in evidence, and the carrier, or defendant, cannot be held liable for such injury."
His Honor instructed the jury, among other things, as follows: "Where stock is delivered to a railroad company for transportation in good order and at the end of transit is found to be injured, then the burden rests upon the defendant to rebut the presumption of negligence. There is then a presumption of negligence if the stock is found to be injured at the end of transit, and the burden is upon the defendant to satisfy the jury that the injury was not caused by negligence of the company." The defendant excepted.
There was a verdict and judgment for the plaintiff, and the defendant appealed.
The question presented by the objection to evidence tending to prove a waiver of the written notice of the claim for damages, and by the motion for judgment of nonsuit, was fully considered at the last term in Baldwin v. R. R., 170 N.C. 12, and in two other cases (352) the opinion in one of which was written by Associate Justice Walker and the other by Associate Justice Hoke, and in all the same conclusion was reached.
The Court said in the first of these cases: "Stipulations in bills of lading covering shipments of live stock, requiring written notice of the claim for damages to be given before the stock is removed from the possession of the carrier, are valid (Selby v. R. R., 113 N.C. 588;Austin v. R. R., 151 N.C. 137); but the requirement that the notice shall be in writing is waived upon proof of actual knowledge of the injury. Kimev. R. R., 153 N.C. 398; Kime v. R. R., 156 N.C. 451; Kime v. R. R.,160 N.C. 464; Wilkins v. R. R., 160 N.C. 58.
"These decisions, the result of mature consideration, were rendered upon interstate shipments and after the enactment of the Elkins Act of 1903, which the defendant contends changes the rule, and we are not inclined to depart from them, at least until there is an authoritative construction of the Federal act to the contrary by the Supreme Court of the United States, which would be binding on us. . . .
"The rule permitting knowledge to supply the written notice is not a discrimination between railroads, nor is it a preference in favor of a particular shipper at the expense of others.
"It is a mode of proof applicable alike to all railroads and in favor of all shippers, and it is enforced against a carrier who has had possession of the property with every opportunity to know the extent of the injury and its cause."
The ruling of the Interstate Commerce Commission, No. 456, which has been called to our attention, does not, in our opinion, purport to make any change in existing law, nor does it materially affect the principle involved. It deals only with the form of the written notice when it is given, expressing the view of the "Commission that a claim or a written notice of intended claim, describing the shipment with reasonable definiteness, will be sufficient; but it does not say that there can be no waiver of such notice or claim.
The contention of the defendant that to permit a waiver of the written notice will afford additional opportunity for discrimination does not impress us as being sound, because if, by collusion between the shipper and the carrier, a false or pretended claim could be established by evidence of a waiver, and thereby a rebate in the freights could be obtained to the extent of the claim, the same result could be reached by the filing of a written notice. *Page 411 
The instruction requested by the defendant is in the abstract correct, but his Honor was justified in refusing it, because there was no evidence presenting the facts embodied in the instruction.
It does not appear in the record whether the stock was old or young, broken or unbroken, gentle or vicious, and if the instruction had been given it would have left the matter open to mere conjecture (353) on the part of the jury.
The instruction given to the jury to which the defendant excepted is fully supported by the authorities. Mitchell v. R. R., 124 N.C. 236;Everett v. R. R., 138 N.C. 68; Peele v. R. R., 149 N.C. 393.
We find no error which entitles the defendant to a new trial.
No error.
Cited: Teeter v. Express Co., 172 N.C. 618 (p); Bryan v. R. R.,174 N.C. 179 (1o, 2o); Dixon v. Davis, 184 N.C. 210 (1l, 2l);Fuller v. R. R., 214 N.C. 652 (p).